DULING v. BURNETT.—124 S. W. (2d) 294.

Middle Section.   September 24, 1938.

Petition for Certiorari Denied by Supreme Court, February 4, 1939.

524

Manier & Crouch, of Nashville, for plaintiff in error.
White & Howard, of Nashville, for defendants in error.

FAW, P. J.   Two cases, brought and docketed separately, were, by consent, tried together in the Circuit Court of Davidson County, and have been brought to this Court in one transcript, with a single bill of exceptions, and docketed and tried together here.

The two cases arose out of a collision between a Chevrolet automobile owned and driven by Albert Duling, Jr., and a "milk truck" owned by Jack Burton and driven by Robert Burnett.

Both actions were brought against Albert Duling, Jr.—one by Robert Burnett for personal injuries suffered by him, and the other by Jack Burton for injuries to his milk truck.

Upon the general issue made by defendant's plea of not guilty to the declaration of each of the plaintiff's the cases were tried by the Court and a jury, and the jury found the issues in favor of the plaintiffs and assessed the damages of plaintiff Burnett at five thousand dollars, and the damages of plaintiff Burton at two hundred and fifty dollars, whereupon the Court rendered a separate judgment accordingly in favor of each plaintiff and against the defendant.

In each case a motion for a new trial was made by the defendant and overruled by the Trial Court, and the defendant prayed an appeal in the nature of a writ of error to this Court, which was granted by the Trial Court and perfected by the defendant.

It should have been stated that, at the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant moved the Court to peremptorily direct the jury to return a verdict for the defendant, which motions were overruled, and the cases were submitted to the jury with the result before stated.

For convenience, we will, in this opinion, refer to the parties as plaintiffs and defendant, according to their respective positions on the record in the Trial Court.

In this Court twelve assignments of error have been filed on behalf of defendant, all of which were included in each of the defendant's motions for a new trial below.

The first assignment is that there is no evidence to support the verdict. The second assignment is that the Court erred in failing to sustain the motion for peremptory instructions in these cases made by the defendant Duling at the close of plaintiff's testimony. The third assignment is that the Court erred in failing to sustain the motion for peremptory instructions made by defendant Duling at the close of all the evidence. Through his assignments numbered four to eleven, inclusive, defendant complains of the action of the Trial Court in refusing to give in charge to the jury certain instructions requested by the defendant. Through his twelfth assignment defendant asserts that "the damages allowed are so excessive as to indicate passion, prejudice or caprice on the part of the jury."

The defendant's second assignment of error, supra, is overruled for the reason that the defendant waived his motion for peremptory instructions made at the close of plaintiff's evidence by thereafter putting on witnesses in his own behalf. Tenn. Cent. Railway Company v. Zearing, 2 Tenn. App., 451, 454, and other cases there cited.

The first and third assignments of error may be considered together, for, if there was evidence which required the submission of the case to the jury, there was necessarily some material evidence to support the verdicts.

Plaintiff Burton operates a dairy in Davidson County and sells milk to various customers in the city of Nashville and its suburbs, which milk he delivers to his customers by means of trucks specially designed for such purpose. Plaintiff Burnett was employed as the regular driver of one of Burton's milk trucks over a "route" which included the Harding Road and Kenner Avenue.

Defendant Duling is a young man engaged in the insurance business, in connection with the New York Life Insurance Company,

with an office in the city of Nashville. At the time of the collision involved in these cases, the defendant lived in Deer Park, a suburban subdivision in the Belle Meade section of Nashville, and his usual route of travel from his home to the business section of Nashville was along and over the Harding Road.

The general direction of Harding Road is east and west, and Kenner Avenue, twenty-eight feet wide, enters Harding Road from the south, but does not extend northward beyond Harding Road.

Harding Road is either sixty-four or sixty-seven feet wide, but, for practical purposes of traffic, its width may be described as divided into three sections. On its northern side there is a strip of smooth concrete, asphalt-top, pavement, twenty feet wide, used by west-bound traffic. On its southern side there is a similar strip of smooth pavement, twenty-four feet wide, used by east-bound traffic. Between the two paved portions above described, there is a macadam surface, which may be used by automobiles, but which is rougher than the aforesaid paved portions on the north and south, and not so available for fast driving.

A single-track street car line is located near the northern side of the aforesaid macadam portion of the road. The northern rail of the street car track is three feet two inches from the concrete pavement on the north, and the southern rail is twelve feet from the concrete pavement on the south. The width of the street car track from rail to rail is four feet and eight inches.

The record contains a large map made by a competent engineer by which the above stated measurements, and numerous other distances involved in the locus in quo, are established. It is thus shown that from the center of Kenner Avenue westward, on Harding Road, to the center of Woodmont Boulevard (which enters Harding Road from the south) is four hundred sixty-eight feet, and from the west margin of Kenner Avenue to the east margin of Woodmont Boulevard is four hundred thirty-nine feet. It also appears that it is down-grade (a decline of thirteen feet) from Woodmont Boulevard to Kenner Avenue, and slightly down-grade westward from Woodmont Boulevard, and that the top of an automobile approaching from the west on Harding Road could be seen at Kenner Avenue for a distance of one hundred forty feet west of Woodmont Boulevard.

About eight thirty o'clock in the morning of April 29, 1936, plaintiff Burnett drove westward on Harding Road and turned southward towards Kenner Avenue (intending to deliver milk to a customer on Kenner Avenue) and when the front of his truck had reached the south margin of Harding Road at the mouth of Kenner Avenue, the Chevrolet Coupe of defendant Duling (which the defendant was driving eastward at the time) collided with plaintiff's truck, turned it over on its side, inflicting serious personal injuries upon plaintiff

Burnett, and damaging plaintiff Burton's truck. Defendant's Chevrolet Coupe was practically demolished by the collision.

With respect to the negligence charged to the defendant, the declarations in the two cases are substantially the same. Each declaration contains three counts.

In the first count of plaintiff Burnett's declaration it is averred that while plaintiff was driving his truck across the Harding Pike and already in the intersection, the defendant came over said rise (at Woodmont Boulevard) and approached said intersection, traveling in a fast, reckless and unlawful rate of speed under the circumstances, and did negligently, carelessly and unlawfully run his automobile into the side of the truck driven by the plaintiff with great force and violence; that at the time defendant drove his car over the top of the aforesaid rise in the Harding Road, he did not have his car under such control as to be able to stop within the range of his view when he passed the crest of the said rise, and that defendant's fast and negligent driving and his failure to have his said car under such control was the proximate cause of the collision.

In the second count, it is averred that, after plaintiff reached the intersection of Kenner Avenue and the Harding Road, and while he was in the act of crossing said intersection in the truck, the defendant approached said intersection from a westerly direction, driving his automobile east on Harding Pike, in a negligent, reckless and careless manner, and in wilful or wanton disregard of the rights or safety of other traffic, and without due caution and circumspection, and at a speed and in a manner so as to endanger or be likely to endanger other traffic and persons and property on said highway; that defendant was not observing and watching the road in front of him and the traffic thereon, and while operating his said automobile in the negligent, reckless and careless manner aforesaid, the defendant did run his said automobile into the intersection of Harding Pike and Kenner Avenue, and did negligently, carelessly, and unlawfully run his automobile into the side of the truck driven by the plaintiff with great force and violence; that the negligent, reckless and careless operation of his said automobile by the defendant, his failure to observe and watch the road in front of him and the traffic thereon, and his negligence in entering the intersection of Kenner Avenue and Harding Road after the plaintiff was already in said intersection, was the proximate cause of the collision.

The averments of the third count, charging the defendant with negligence, are as follows:

"After the plaintiff reached the intersection of Kenner Avenue, and the Harding Pike, and while he was in the act of crossing said intersection in the truck, the defendant, Albert Duling, Jr., approached said intersection from a westerly direction, driving his au-

tomobile east on the Harding Pike. The defendant, Albert Duling, Jr., was driving his automobile in a fast, reckless, and unlawful manner, and bore down upon the truck driven by the plaintiff while the same was in the intersection, with such speed as to create imminent danger of a collision between the said automobile of defendant and the truck driven by the plaintiff. Shortly before the actual collision occurred there was this peril of an accident, which was, or could have been, discovered by the defendant, Albert Duling, Jr., who made no effort to avoid the collision, either by slowing up his automobile or by turning out to the middle of the road and passing to the north of the truck driven by plaintiff. Said defendant made no effort to avoid said collision, but continued in a straight course at approximately the same speed on the extreme right or southerly side of the Harding Pike and struck the truck driven by plaintiff as the same was entering the mouth of Kenner Avenue. The Harding Pike is very broad at this point and there is room for several cars to run abreast in the south half thereof, and there was at least room for two cars to pass to the north of the rear end of the truck driven by the plaintiff on the Harding Pike, without crossing the center of the pike. That after the peril was, or could have been by the exercise of ordinary care, discovered by the defendant, the said defendant could have readily avoided the collision and the injury to the plaintiff, but instead of avoiding said accident said defendant, Albert Duling, Jr., did negligently, carelessly and unlawfully run his automobile into the side of the truck driven by the plaintiff with great force and violence. The failure of the defendant, Albert Duling, Jr., to avert or try to avert the collision after he, the defendant, discovered the peril or could have discovered the same, in the exercise of ordinary care, was the proximate cause of the collision aforesaid.''

The learned Trial Judge instructed the jury that the second count of each declaration was based on sections 2681 and 2687 (b) of the Code of Tennessee, which sections are as follows:

2681. ''It shall be unlawful for any person to drive any vehicle upon any road, street or highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, and without due caution and circumspection at a speed and in a manner so as to endanger or be likely to endanger any person or property.''

2687(b). ''The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle; provided, the driver of the vehicle turning to the left has given a plainly visible signal of intention to turn.''

The jury was further instructed, in substance and effect, that the

third count of each declaration was based on the doctrine of "last clear chance."

No error is assigned upon the instructions through which the declaration was thus interpreted by the Trial Judge, and we are not intimating that such interpretation of the declarations was erroneous, but we have referred to these instructions merely in order that the theory on which the case was tried below may be seen.

Although, in their supplemental brief, the learned and able counsel for defendant insist that "under all the circumstances, as detailed in the record, Duling was in the exercise of ordinary care," we think it obvious that there was evidence reasonably tending to show that the defendant was not keeping a proper "lookout," and was not exercising the care, caution and circumspection demanded by the circumstances as he approached the intersection of Kenner Avenue and Harding Road on the occasion in question. The verdict implies that the jury accepted such evidence. as the truth of the case.

It is contended for defendant that it appears from the testimony of plaintiff Burnett that he was guilty of negligence as a matter of law, which was a proximate cause of the collision, and that, therefore, the Trial Court should have directed a verdict for the defendant in each case, and that there is no evidence to support the verdicts. Of course, if upon the undisputed evidence, it could be declared, as a matter of law, that plaintiff Burnett was guilty of negligence which contributed, as a proximate cause of the collision, verdicts should have been directed for the defendant, notwithstanding his negligence. Knoxville Traction Company v. Brown, 115 Tenn., 323, 331, 89 S. W., 319.

But, "the question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar his recovery." Carey Roofing & Mfg. Co. v. Black, 129 Tenn., 30, 36, 37, 164 S. W., 1183, 1185, 51 L. R. A. (N. S.), 340.

"Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury."

Gunning v. Cooley, 281 U. S., 90, 94, 50 S. Ct., 231, 233, 74 L. Ed., 720, 724.

Plaintiff Burnett testified, in substance, that he drove his truck westward on the north side of Harding Road to its intersection with Kenner Avenue (projected across Harding Road) and there turned southward across the street car track, intending to proceed south on Kenner Avenue; that he was driving at a speed of about twenty-five miles an hour on Harding Road until he reached a point about seventy-five feet from the aforesaid intersection with Kenner Avenue, when he bore to his left, slowed down to a speed of about twelve miles an hour and put out his hand as a signal that he was preparing to turn to his left; that he came "almost to a complete stop" as he crossed the street car track, which made it necessary to put the truck in low gear, and he had to withdraw the hand with which he was signaling and use both hands in changing gears; that he proceeded southward (angling in the direction of the southwest corner of Kenner Avenue and Harding Road), in low gear, at a speed of five or six miles an hour, and when the radiator of his truck (the truck being sixteen and one-half feet long) had reached the southern margin of Harding Road in the mouth of Kenner Avenue, there was a "crash," and that was the last thing he remembered until he later became conscious in the hospital.

Plaintiff Burnett testified further that while his truck was on the street car track as aforesaid, he looked west out the Harding Road and there were no cars approaching from the west within the range of his vision; that he had an unobstructed view of the Harding Road westward for "about seven hundred feet" from that point, and that he did not look westward again, but was looking ahead into Kenner Avenue as he proceeded to the point where the collision occurred.

In the brief for defendant it is said: "This oral testimony of Burnett is so contrary to physical facts and mathematical calculations, so impossible and inherently improbable and untrue that it is not evidence at all and should be so treated by this Court."

The "physical facts rule," which defendant thus seeks to invoke, is, when the facts justify its application, well supported by a line of Tennessee cases cited in defendant's brief. Nashville, C. & St. L. Railway Co. v. Justice, 5 Tenn. Civ. App., 69; Klein v. Railway Co., 4 Tenn. App., 563; Louisville & N. Railway Co. v. May, 5 Tenn. App., 100; Nashville, C. & St. L. Railway Co. v. Perry, 13 Tenn. App., 268; Union Traction Co. v. Todd, 16 Tenn. App., 200, 64 S. W. (2d) 26; Oliver v. Union Transfer Co., 17 Tenn. App., 694, 71 S. W. (2d) 478.

In a comparatively recent case (March 10, 1936) it was held by our Supreme Court that in order to justify the rejection of testimony under the above mentioned rule, "the palpable untruthfulness requisite must be (1) inherent in the rejected testimony, so that

it contradicts itself, or (2) irreconcilable with facts of which, under recognized rules, the court takes judicial knowledge, or (3) obviously inconsistent with, contradicted by, undisputed physical facts." Southern Railway Co. v. Hutson, 170 Tenn., 5, 7, 91 S. W. (2d) 290, 291.

In the instant case, the defendant's contention that Burnett's testimony is "contrary to physical facts" is based entirely upon a mathematical calculation, the substance of which contention is stated in an excerpt from defendant's brief as follows:

"According to Burnett, if these cars were not on the roadway when Burnett looked west for seven hundred feet as he 'paused' on the car tracks, then Duling, Morehead and Davies traveled seven hundred or more feet while Burnett traveled thirty-six feet. In other words, while Burnett, according to his statement, was traveling thirty-six feet (without looking) at a speed of five to six miles per hour, the other cars were having to make a speed of one hundred to one hundred and twenty-five miles per hour to be where they in fact were when the collision occurred. This is impossible under the uncontradicted evidence and physical facts."

In the brief for plaintiffs, the response to the foregoing argument of defendant is as follows:

"The defendant's method of comparing the relative speed of the defendant's car and the plaintiff's truck overlooked and disregarded several important factors. He fails to recognize that after the plaintiff looked up the hill he was then compelled to give his attention to the matter of shifting gears, looking into Kenner Avenue in the direction in which he was headed and then getting his heavy truck started across the rough surface of the car tracks. Certainly it must be conceded that some 5 or 6 additional seconds for the slowly moving, heavy truck, with its load of milk bottles, to arrive at the point where the defendant collided with it—in the mouth of Kenner Avenue and half of the truck being off the Harding Road pavement. Therefore, it cannot be denied that something like 12 seconds expired from the time that the plaintiff looked up the hill until the defendant's car crashed into the truck. During this 12 seconds of time the defendant came over the hill and drove on down the hill at a speed of not less than 35 miles per hour, according to his own testimony. Of course the undisputed physical facts demonstrate that he was running at a much more rapid speed. In any event, at the rate of 35 miles per hour he was traveling 52 feet per second. During the 12 seconds which expired while the plaintiff was changing gears and moving his heavy truck, the defendant would have traveled 624 feet. If the defendant was in fact travelling 50 miles per hour he would have traveled at the rate of 72 feet per second or a total distance of 864 feet in 12 seconds.

"The crest of the hill is located at the mouth of Woodmont Boulevard. The distance from Woodmont Boulevard to Kenner Avenue (margin to margin) is 439 feet, and the distance from center to center of these streets is 468 feet. It is undisputed that even the very top of the defendant's car could only be seen when it was 140 feet beyond the crest of the hill. Thus even the top of the defendant's car could not have been seen when it was more than 608 feet from the point where plaintiff was located when he looked. So according to the defendant's testimony that he was running only 35 miles per hour, we cannot assume that the defendant's car was within sight when the plaintiff looked. Under these circumstances it cannot be seriously contended that plaintiff's evidence should be discarded. This rule of law pertaining to discarding of a witness' testimony only applies when the 'physical facts' are established beyond dispute, and only when such physical facts cannot be reconciled with the testimony."

It is seen that the contention of defendant above stated rests upon estimates of the time consumed by Burnett in crossing the street car track (where he "almost came to a complete stop," and looked westward out the Harding Road, and changed gears) and then driving, in low gear, from the street car track to the point of the collision. Upon the hypothesis thus assumed, counsel demonstrate, by a mathematical calculation, that if Duling's car was not within the range of Burnett's vision at the time he (Burnett) looked westward from the street car track, it would have been necessary for Duling's car to have been driven at an impossible rate of speed in order to reach the point of the collision before Burnett's truck cleared the Harding Road.

In Anderson's Automobile Accident. Suit it is said (in section 572, page 708) that the physical facts rule cannot be applied "where it is necessary to make estimates or measurements, or to start with an assumption of the existence of a fact;" citing McNamara v. Rainey Luggage Co., 139 Va., 197, 123 S. E., 515; Heg v. Mullen, 115 Wash., 252, 197 P., 51.

And, in the same section, the case of Williams v. Cohn, 201 Iowa, 1121, 206 N. W., 823, is cited for the statement that, "The rule with respect to physical facts will not be applied where its application would involve giving weight to the testimony of witnesses and drawing mathematical deductions from their evidence as to how far a truck moved forward before it was stopped."

We do not think that the verdicts in the instant cases necessarily depend upon evidence that is so far physically impossible or palpably improbable as that the court may discard it. It was within the province of the jury, in weighing all the evidence, to consider such "physical facts" as were disclosed by the testimony of the

witnesses. Anderson's Automobile Accident Suit, section 573, page 709.

It is further insisted for defendant that Burnett's failure to look westward, out the Harding Road, after he crossed the street car track (which he admitted), was, as a matter of law, contributory negligence which barred the actions of the plaintiffs.

The "continuing duty to look," which defendant thus seeks to invoke is, in Tennessee, applicable to "railroad crossing cases," and in some jurisdictions is applicable to cases involving collisions between automobiles at street or highway intersections; but "most cases hold that the question whether the driver was negligent in not looking in the direction from which the other automobile approached is a question of fact for the jury. The question whether the driver should have seen the other automobile, had he looked or had he looked effectively, and should have stopped his own automobile, is held to be one of fact for the jury, or for the court sitting in the absence of a jury; likewise the question whether the driver's failure to look contributed to the collision." Vartanian on The Law of Automobiles, pages 343-344.

One of the authorities cited by the author in support of the text last above quoted is Studer v. Plumlee, 130 Tenn., 517, 172 S. W., 305, which is, we think, controlling authority on the point now under consideration. In Studer v. Plumlee, supra, the Court said: "The rule that one about to cross a railroad track, in the use of a highway, must stop, look, and listen does not apply to a traveler thus coming out of an intersecting street into a street upon which automobiles are customarily run, which machines are capable of safe operation and are not inherently dangerous instrumentalities. 'He is not required, as a matter of law, to look both ways and listen, but only to exercise such reasonable care as the case requires, for he has the right to assume that a driver will also exercise due care and approach the crossing with his vehicle under control.' [Citing authorities.] Where the measure of care is ordinary or reasonable care, and the degree of that care thus varies with the circumstances, the question of contributory negligence is one for the jury. [Citing authorities.]"

It is further insisted for defendant that plaintiff Burnett violated Section 2685 of the Code, and was therefore guilty of negligence per se. Said Section reads as follows:

"In crossing an intersection of highways or the intersection of a highway by a railroad right of way, the driver of a vehicle shall at all times cause such vehicle to travel on the right half of the highway unles such right half is obstructed or impassable."

The testimony of Burnett was to the effect that when he turned across the street car track he "cut the corner" but "angled" toward the southwest across the street car track and the macadam, and when

he reached the concrete pavement on the south side of the macadam, and also when the collision occurred, his truck was west of the center line of Kenner Avenue (extended). This was disputed by the defendant, and it was for the jury to say where the truck was when the collision occurred.

Assuming (without deciding) that Section 2685, supra, applied to the facts of these cases, it is difficult to see how the act of Burnett in "cutting the corner," either in the manner stated by him or as contended by defendant, could have been a factor in causing the collision. But, however this may have been, "the inquiry as to what is the proximate cause of an injury, like that of negligence, is always for the jury, unless the determinative facts are undisputed and are reasonably susceptible of but one inference." Elmore v. Thompson, 14 Tenn. App., 78, 101, and authorities there cited.

In Anderson's Automobile Accident Suit (section 599, page 744) it is said that, "Generally when such an act as cutting a corner or shifting diagonally from one line of traffic to another is alleged to have resulted in a collision and injury to the plaintiff, the question of proximate cause is a jury question."

And in the same volume (section 620, page 764) it is said: "The rule is the same whether the violation is relied upon for recovery or as a defense. In either case, the question of whether or not the violation was the proximate cause of the injuries complained of must be submitted to the jury."

Whether plaintiff or defendant had the "right of way" at the time and place of the collision is not a determinative question. The mere fact that one vehicle has the right of way over another at a street intersection does not relieve the driver of the vehicle thus favored from the duty of exercising due care not to injure others at the street intersection. See Annotations, 21 A. L. R., 988; 37 A. L. R., 509; 47 A. L. R., 614; 89 A. L. R., 838.

The defendant's first and third assignments of error are overruled.

As before stated, defendant's assignments of error numbered four to eleven, inclusive, are based upon the action of the Trial Judge in refusing to give in charge to the jury eight several instructions specially requested on behalf of the defendant—each of said assignments containing a copy of a separate request refused by the Trial Judge.

We have carefully examined all of the instructions thus requested and refused, and find that each presents some phase of the defendant's contentions with respect to negligence of plaintiff Burnett.

It is insisted for plaintiffs that some of these requests were "unsound," and further that, so far as they contained proper instructions, they were sufficiently covered by the charge given to the jury.

In the course of the Court's charge to the jury we find the following instructions:

"The proximate cause of an injury is that act or omission, preceding the accident, which causes, or fails to prevent, the injury. In other words, it is the act or omission, occurring or concurring with another act, which, had it not happened, the injury would not have been inflicted.

"And if the party guilty of such act or omission could, by the exercise of ordinary care, have anticipated or foreseen that an injury of such nature as the one which did occur, would probably result from such act or omission, then that party would be guilty of negligence proximately causing or contributing to the injury.

"If the defendant should be the only party thus guilty, the defendant would be liable for the injury; if the plaintiff or the persons injured should be the guilty party, then the defendant would not be liable for the injury. If both parties should be guilty of such negligence, that is, negligence which directly and proximately causes or contributes to the injury, still the defendant would not be liable. . . .

"This case is based on the alleged negligence of the defendant, and the defendant, among other things, contends that the plaintiff was guilty of negligence which proximately caused or contributed to his own injury, which, if true, would bar a recovery.

"Negligence as applied to either the person injured or to the defendant in a case like this, means the failure to exercise ordinary care, that is, such care as ordinarily prudent persons would exercise under circumstances similar to those shown by the evidence in this case.

"It was the duty, gentlemen of the jury, of both of these parties—the plaintiff Burnett and the defendant—to exercise reasonable care and prudence at the time of the accident; that is, it was the duty of the parties to exercise that degree of care, which the law imposes upon each of them, which is reasonable care, ordinary care, and a failure to exercise such care would constitute negligence on the part of either one of them guilty of such failure. Ordinary care would dictate that persons operating motor vehicles on the highways should drive on the right hand side of the center of the road, and such persons crossing over, into and across the line of traffic coming from the opposite direction, is charged with the duty of exercising ordinary or reasonable care to avoid a collision with vehicles coming from either direction and rightfully on the other, or his left, side of the road. He must exercise that degree of care commensurate with the conditions of traffic which a reasonably prudent person would exercise under similar circumstances.

"It is the duty of persons who operate motor vehicles on the highways to exercise ordinary care that is commensurate with the risk,

taking into consideration the roadway and the amount of traffic or travel thereon, and any and all other circumstances and facts that should be considered by an ordinarily prudent person; he should be vigilant and on the lookout, and have his car under reasonable control, and when danger approaches, do the reasonably necessary things to avoid a collision. They should see those things on a highway which a reasonably prudent and careful person could see.

"I charge you, gentlemen of the jury, that if you find from a preponderance of all the evidence in the case that both the defendant and the plaintiff Burnett—that is, both parties—were guilty of negligence, and that their combined negligence was the direct and proximate cause of the accident and injuries complained of, then the plaintiff cannot recover in either case, and your verdict should be for the defendant in each case.

"If you find that the plaintiff Burnett was guilty of some negligence in the premises, but that his negligence did not contribute proximately to the accident, this fact alone would not bar his recovery, but must be considered by the jury in reducing the amount of damages you would otherwise assess in your verdict against the defendant, provided you find that the accident was the proximate result of the defendant's negligence.

"The Court charges you that the physical facts, that is, the position of the vehicles and their condition just following the accident, can be considered by you as evidence in the case.

"The second counts in both declarations are based on the following State statutes:

"2681. 'It shall be unlawful for any person to drive any vehicle upon any road, street or highway carelessly and heedlessly and in wilful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed and in a manner so as to endanger, or be likely to endanger any person or property.'

"Now, the other statute relied upon and on which that count is based is 2687(b)—the one I have just read being 2681:

" 'The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle; provided, the driver of the vehicle turning to the left has given a plainly visible signal of intention to turn.'

"The Court charges you that the violation of a State statute is negligence per se—that is, in itself. And if the violation of a State statute by the defendant was the direct and proximate cause of the accident, then the defendant would be liable, provided the plaintiff were not also guilty of some negligence which directly and proximately caused or contributed to his own injury.

"If the violation of a State statute by the plaintiff proximately

caused or contributed to his own injury, then he would be guilty of contributory negligence which would bar his recovery.

"The Court charges you further, that if you find from the preponderance of all the evidence that Burnett failed to give a plainly visible signal that he intended to turn left into said intersection, then he would be guilty of some negligence. Whether or not such negligence contributed as a direct and proximate cause of the accident, is a question for you to decide from all the evidence.

"The Court charges you that a person finding himself in an emergency calling for immediate decision and action, is not liable for a wrong decision, if he acts in good faith, uses his best judgment, and does what an ordinarily prudent person would do under similar circumstances of such emergency.

"But if you shall find from a preponderance of all the evidence in the case that the plaintiff was guilty of contributory negligence; that is, if the plaintiff Burnett failed to exercise ordinary care for his own protection, and that such failure contributed in any degree, directly, as a proximate cause of the injury, then the plaintiff cannot recover in this suit, and your verdict should be in favor of the defendant. . . .

"The Court charges you that any contributory negligence of the plaintiff Robert Burnett would be attributable to the plaintiff Jack Burton; and if the plaintiff Burnett is barred by his contributory negligence, then the plaintiff Burton is also barred from a recovery in this case."

After a consideration of the charge of the Trial Court, in connection with the evidence in the case, we are of the opinion that the instructions with respect to negligence of plaintiff Burnett were ample, accurate and clearly stated, and that no reversible error was committed by the Trial Judge in declining to give defendant's requests to the jury. "The rule has long been established, by an unbroken line of judicial authority, that the refusal to give a requested instruction, even though it states the law correctly, does not constitute reversible error if it is substantially covered by the instructions given, or if everything in the requested instruction which the party is entitled to have given, has already been given by the court in other instructions." 14 R. C. L., pages 752-755, section 22.

The defendant's assignments of error numbered four to eleven, inclusive, are overruled.

The twelfth, and last, assignment is that "the damages allowed are so excessive as to indicate passion, prejudice or caprice on the part of the jury."

Plaintiff Burnett was forty-two years of age and in good health. He had been employed as the driver of a milk truck for nine years, and was earning twenty dollars a week at the time he was injured. For a description of his injuries, we quote excerpts

from the testimony of Dr. R. L. Dozier, his attending physician, who was called to St. Thomas Hospital shortly after Burnett was carried there. Dr. Dozier said:

"A. He had the left collar bone, both shoulder blades, and I think there was some double fractures of some of the ribs, amounting to probably 12 or 14 fractures of the ribs all together; that is, some of them were broken twice; I think there were about 12 or 14 fractures of ribs, some on one side and some on the other side; and then he had a fracture, a double fracture, of the pelvic bone, in the descending part of the bone that he would sit on, to make it plain to you, now that was broken twice. That is the number of fractures.

"Q. Two collar bones? A. No, one collar bone, the left collar bone.

"Q. Now, was he suffering from any head injury and concussion or anything? A. Well, yes, he had a concussion; his eyes showed a hemorrhage; both eges (eyes) were pretty well hemorrhaged, and his blood sinitic, and his face was swollen, and he had a few scratches about the face, but I don't remember just where they were located now, . . .

"A. He had penetrated lungs; that is, we mean by that that you would say that his lungs bursted, to make it plain, probably, the air had escaped from the lungs underneath the skin; we call that an emphysema, or air under the skin, and that extended down just below the forks of the breast bone, to make it plain.

"Q. You say his lungs had, what a layman would term, burst? A. Yes.

"Q. Did that force it out under the skin? A. That is right.

"Q. Did that cause an immediately enlarged condition of his torso or upper part of his body? A. Yes; it looked like if you were to blow him up with a quill, force air under his skin.

"Q. Was his skin blue? A. Yes, he was sinitic blue.

"Q. When you first examined him did you think it was a fatal injury? A. Yes, I didn't think there was very much we could do, if anything, for him; yes, I did.

"Q. Was there much you could do for him? A. Well, there wasn't very much we could do for him except to keep him quiet and full of morphine, and we didn't attempt to reduce the fractures or anything of that kind until I would say, ten days or two weeks.

"Q. When he commenced to get a little better and recovered some from this shock, did you put a cast on him, or when did you do that? A. No, not when he began to recover from the shock, but when we found that the emphysema, or air, in other words, under the skin, began to disappear enough, we felt then that his lung was closed, was not leaking any more air, then we put on his cast.

"Q. As soon as you felt this tear or burst place in his lung had closed up, you then put him in a cast? A. Yes.

"Q. In other words, it would have been dangerous to put him in a cast until that ceased to leak more air under the skin? A. Yes.

"Q. What was the most serious part of his injury, the breaks of the bones, the head injury, or crushed and broken bones? A. The injury to his lung was the most serious of all.

"Q. That was the most serious of all? A. That is right.

"Q. And after a few days, or a week, when you thought that was clearing up, did you or not then determine there was some chance to save his life and pull him through? A. That is right; we put him in this cast and began his regular internal treatment.

"Q. Where did that cast extend? A. Plaster cast, that was from his neck down his legs— . . .

"Q. Could you tell that he had suffered a great deal or not? A. Well, the presumption with all of them we have ever seen we know they do, but I kept the man full of morphine to try to save his life, to gain that, because we don't give the morphine to save him pain, but we give the morphine to force air out of his chest. He had pain; just how much it would be hard to say; because after he was put in the cast the parts were all held still, and that naturally relieved his pain more or less.

"Q. Does this plaster of Paris cast cause a man great discomfort or not? A. Well, some of them it does.

"Q. Do they have to lie just in one position until they are turned, is that right? A. Yes, they can't turn themselves.

"Q. How long would you say it was before he was able to do any kind of work after this injury? A. Well, I don't think he would be able to do much work hardly under a year from the time of his injury; very little."

We think the foregoing undisputed testimony of Dr. Dozier is a sufficient answer to the twelfth assignment of error, so far as it relates to the amount ($5,000) allowed plaintiff Burnett. Power Packing Company v. Borum, 8 Tenn. App., 162, 180.

According to the proof, the damage to plaintiff Burton's truck was one hundred and fifty-six dollars; the damage to the contents of the truck (milk bottles, etc.) was sixty dollars and thirty cents; the loss of the use of the truck five days, at nine dollars and eighty cents per day, was forty-nine dollars; total two hundred sixty-five dollars and thirty cents. This was fifteen dollars and thirty cents more than Burton's recovery. The defendant's twelfth assignment of error is overruled.

It results that the defendant's assignments of error are all overruled and the judgments of the Circuit Court are affirmed. Judgments will accordingly be entered against the defendant, viz: a

judgment in favor of plaintiff Burnett for five thousand dollars, with interest thereon from the date of the judgment below (January 6, 1937), and a judgment in favor of plaintiff Burton for two hundred and fifty dollars, with interest thereon from the date of the judgment below, and a judgment in favor of the plaintiffs for the costs of the cause accrued in the Circuit Court.

The costs of the appeal will be adjudged against defendant Duling and the surety on his appeal bond.

Crownover and Felts, JJ., concur.