## WALLER v. MORGAN.—133 S. W. (2d) 614.

Middle Section.   August 12, 1939.

Petition for Certiorari denied by Supreme Court, December 8, 1939.

Guild & Guild, of Nashville, for plaintiff in error.

Farmer, Denney & Leftwich, of Nashville, for defendant in error.

FELTS, J.   Mrs. Pearl Waller, Administratrix, brought this suit against George B. Morgan for causing the death of her son and intestate, M. T. Waller, Jr., by negligently driving an automobile in which he was a guest into a collision with another automobile at a street intersection in Nashville.   There was a verdict and judgment in favor of Morgan and Mrs. Waller has appealed in error.   She insists that there was no evidence to support the verdict, and that the trial judge erred in his charge.

M. T. Waller, Jr., was 21 years of age.   He and defendant Morgan were both employed at the Nashville Tennessean newspaper.   In the afternoons defendant's wife would come for him in his automobile, and in going home they passed through the section of the city where the deceased lived, and they would often take him home in defendant's automobile, and were doing so on the afternoon of July 13, 1937, when the accident happened.

It occurred about 5:30 p. m., at the intersection of Martin Street and Humphreys Street.   Defendant was driving his automobile.   On the front seat with him was his wife, and on the rear seat were his mother-in-law, Mrs. Woodward, and the deceased, Mrs. Woodward being on the right immediately behind her daughter and the deceased being on the left immediately behind defendant.   Defendant was driving south on Martin Street.   A Ford automobile, in which there were two negroes, one of them, the driver, being Napoleon Drumright, was coming west on Humphreys Street.   Defendant's car entered the intersection and about the time it reached the center of Humphreys Street the Ford struck its left side about where deceased was seated, knocking down the left rear wheel and crushing in the left rear fender and door.   Two photographs are sent up, one of which shows the damage to the left rear of defendant's car, and the other shows the damage to the front of the Ford car.   None of the occupants of defendant's car was seriously hurt except Waller, who died the next day of a brain injury received in the collision.   Immediately after the accident one of the negroes was taken to the hospital and the other disappeared.   Drumright, driver of the Ford, was later indicted for manslaughter.

At this intersection there was no traffic light.   Nor was either of the streets marked as an arterial highway.   Code, sec. 2689. So, if the two cars approached the intersection at the same time, de-

fendant had the right of way, as his was the vehicle on the right. Code, sec. 2687(a). But this did not relieve him of the duty of exercising ordinary care in driving into the intersection. Maxwell v. Kirkpatrick, 22 Tenn. App., 21, 28, 116 S. W., 340, 344; Duling v. Burnett, 22 Tenn. App., 522, 534, 124 S. W. (2d), 294, 302. And he owed such duty to the deceased as his guest. Tennessee Cent. R. Co. v. Vanhoy, 143 Tenn., 312, 226 S. W., 225.

Counsel for plaintiff contend that defendant's own testimony demonstrates that he breached this duty and was guilty of negligence which was a substantial factor in causing the damage sued for. Defendant testified that he was driving on his right side of Martin Street and as he approached the intersection he slowed down to about five miles per hour; that he looked both ways, saw no car coming, and entered the intersection; that about the time he reached the center of it he saw the Ford rapidly approaching on his left, and he increased his speed and tried to get out of its way, but was unable to do so. The speed of the Ford was estimated by the witnesses to be 40 to 50 miles per hour. Neither of the occupants of the Ford was called as a witness by either side. A house on the northeast corner of the intersection obstructed defendant's view to the east, the direction from which the Ford came, until he got within 15 feet of the north margin of Humphreys Street, but from that point on the view was unobstructed. On cross-examination defendant was asked how far away the Ford was when he first saw it, and answered: "It was all so quick, I don't remember how far away it was."

"Q. Well, approximately? A. Well, he was right on me, eight or ten feet from me.

"Q. About ten feet? A. That was an estimate—it may have been fifteen.

"Q. We will give you the benefit of the doubt and said (say) it was twenty—it wasn't over twenty? A. No, sir."

This, it is argued, shows that "defendant blindly entered the intersection, without looking," because his testimony that he looked must be rejected as contrary to the undisputed physical facts and inherently untrue. Southern R. Co. v. Hutson, 170 Tenn., 5, 91 S. W. (2d), 290, and other cases there cited. This argument rests on a calculation based on estimates as to the speeds of the cars and the disstances traveled by them in the interval between the instant defendant's view became unobstructed and the instant of the collision. It is said that the distance from where defendant's view ceased to be obstructed to where the collision occurred was 32½ feet; that at the rate of five miles per hour it would have taken him four seconds to travel this distance; that in these four seconds the Ford, going 50 miles per hour, would have traveled 300 feet on Humphreys Street; that during the whole of this space of 300 feet and this interval of four seconds, defendant would have seen the Ford coming, if he

had looked; and that, therefore, his statement that he looked both ways before entering the instruction but saw no car coming until he had reached the center of the intersection and the Ford was only ten or twenty feet away, must be rejected as physically impossible and inherently untrue.

These estimates as to the speeds of the cars, the distances traveled, the time consumed, the positions of defendant when he first looked and when he later saw the Ford, and its distance from him at that time, are not undisputed physical facts, but mere impressions of the witness gained in a moment of emergency and excitement and necessarily very uncertain and indefinite. The "physical facts rule" cannot be applied where its application depends upon assumptions or calculations based upon estimates as to speed, distance, time, and other such uncertain matters in the movement of vehicles. Duling v. Burnett, 22 Tenn. App., 522, 532, 124 S. W. (2d), 294, 300; Compare Municipal Paving & Construction Co. v. Hunt, 22 Tenn. App., 380, 123 S. W. (2d), 843. The "Stop, look, and listen rule" applicable at railroad crossings is not applicable at street intersections. The extent of defendant's duty was to use ordinary care in looking out for vehicles at this intersection. He could not give his whole attention to looking to his left for traffic over which the statute gave him the right of way, but had to divide it by looking also the other way for traffic to which he had to yield the right of way. Whether he was negligent in not seeing the Ford sooner or in not stopping to let it pass, was a question for the jury (Duling v. Burnett, supra); and the verdict is not without evidence to support it.

The portion of the charge complained of was an instruction requested by defendant, presenting his theory that the Ford was being operated at an excessive speed in violation of the city ordinance, and that this was the proximate cause of the accident. The complaint is that this instruction removed from the jury's consideration the question whether the proximate cause of the accident was the combined negligence of the drivers of both cars. Considered alone, the instruction might be open to this objection; but it is not, when considered with the rest of the charge, as must be done; for plaintiff's counsel concede that the judge there "correctly charged the jury upon the issue of concurrent negligence of the two drivers of said automobiles." We do not think this instruction withdrew this issue, or otherwise prejudiced the rights of plaintiff.

The judgment of the circuit court is affirmed, and the plaintiff, Mrs. Pearl Waller, Administratrix, will pay all the costs, including the costs of this appeal in error.

Faw, P. J., and Crownover, J., concur.