# Louisville & Nashville Railroad Company v. Marlow.

(Decided March 14, 1916.)

## Appeal from Laurel Circuit Court.

1. **Railroads—Injury to One on Right of Way.**—Neither the public nor an individual may, by a continuous course of trespassing, acquire a prescriptive right in and to the use of the railroad track or right of way so as to obtain any property right in the place or in the use of the place, and when such place is off of the track and not where one using it is liable to be struck by a moving train, there is no rule imposing the duty on the company to anticipate the presence of persons at such place, or to exercise care in the movement of the trains to prevent injury to anyone using the right of way there by objects flying from the train while passing.

2. **Railroads—Injury to One on Right of Way—When There Can be no Recovery.**—Plaintiff was traveling on a pathway about four feet from the end of the ties in the town of Pittsburg, Laurel County, which pathway had been used by the public with the acquiescence of the company for more than 25 years, and while using it he was injured by a piece of iron flying from a passing train striking him. There was no evidence to show what caused the iron to fly from the train, or whether it was produced by any negligence, active or passive, of any of the servants or agents in charge of the movement of the train, and the place where plaintiff was traveling was not where he could be struck by any part of the train. Held that he was not entitled to recover in the absence of a showing that the iron was caused to fly from the train by some affirmative or positive act of negligence on the part of those having charge of the movement of the train.

GEORGE G. BROCK and BENJAMIN D. WARFIELD for appellant.

C. C. WILLIAMS and H. J. JOHNSON for appellee.

## OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The town of Pittsburgh, in Laurel county, is a mining town and extends along the railroad track of the appellant north and south for a considerable distance, the northern part of the town being known as Baxtertown, and just north of Baxtertown is another village known as East Bernstadt. About 350 yards north from the depot in Pittsburgh is a public road crossing over the right of way and track of appellant. Between this public crossing and the depot there has existed for twenty-five years or more a pathway on the railroad right of way on the

east side of the track and some four or five feet from the ends of the ties. This pathway has been used by the public generally as a walkway, as is conceded by appellant, for such a length of time and by a sufficient number of people as to impose the duty upon the railroad company in the operation of its trains to anticipate the presence of those using it and to exercise a corresponding degree of care in the operation of its trains to prevent injuring such persons by any of its trains while passing over that portion of its track, if its location was on, or sufficiently near, the track so that persons using it might be struck by the moving trains.

On November 26, 1913, the appellee was traveling over this pathway going north, and when he was about 100 feet from the public road crossing, a freight train consisting of about 35 cars approached from the south and as the tender to the engine was even with him he was struck and injured by a piece of iron pipe, which was hollow and about two inches in diameter and eight or nine feet long. His right leg was broken just above the ankle and he sustained some other minor injuries. He brought this suit to recover damages for his injuries, alleging that the company negligently permitted the piece of pipe to swing out or be thrown from its train and strike him, or that same was purposely or negligently thrown from the train by some of the agents and servants in charge of it. The allegations of the petition were denied by the answer of the defendant and in a second paragraph it pleaded contributory negligence, which was denied by reply, and upon a trial there was a verdict in behalf of plaintiff in the sum of $2,000.00, which it is sought to have set aside on this appeal.

In cities and towns, or thickly populated communities, where the people generally have used the track of the railroad company for a considerable length of time, out of humane reasons and for a due regard for life and limb, the law raises a presumption that such use of the track is by acquiescence of the company and imposes the duty upon it while using its tracks at that place, in the operation of its trains to anticipate the presence of persons so using it and to exercise a corresponding degree of care in approaching said place to keep a lookout to discover the presence of persons on the track there and to exercise the same care in the control of the movement of its trains at such places and to have them under

reasonable control to prevent injury to any one so using the track at that place. L. & N. R. R. Co. v. Veach, 129 Ky., 775; Shelby v. C., N. O. & T. P. Ry. Co., 85 Ky., 224; Connelly v. C., N. O. & T. P. Ry. Co., 89 Ky., 402; I. C. R. R. Co. v. Flaherty, 139 Ky., 147; L. & N. R. R. Co. v. McNary, 128 Ky., 408; I. C. R. R. Co. v. Murphy, 123 Ky., 787; Southern Railroad in Kentucky v. Sanders, 145 Ky., 679.

An examination of these cases will show that there is no effort made through the rule announced by them to convert the user of the track at such place from a trespasser into a rightful user or licensee. It is nowhere indicated in any of the cases that the public or any member of it by the character of use considered, acquires any property right in and to the use of the track or right of way for a passway by way of easement or otherwise. On the contrary, it is the settled doctrine in this State that no such rights can be acquired through persistent and repeated wrongs. As is stated by this court in L. H. & St. L. R. R. Co. v. Woolfork, 30 Ky. L. Rep., 569:

"These persons were trespassers, and, as a practical proposition, the railroad has no remedy against such trespassers. The public cannot acquire a right in the private property of a railroad by repeated wrongs. If this could be done, then the railroad's tracks, bridges, and trestles would be at the mercy of habitual wrongdoers, and the corporation largely deprived of its property rights for public use without the compensation provided by the constitution.

"The reasoning which requires railroad corporations to exercise a lookout duty when their tracks cross the streets of cities or towns at grade, or constitute a part of the highway of municipalities or thickly settled places or communities, has no place in the case at bar. A lookout duty is imposed upon the corporations in the class of cases mentioned because the public have a right to cross and be on their roadway, and, therefore, they must use due care not to injure those who are exercising their lawful rights in the premises."

In denying the application of the rule announced in the cases, *supra,* as to the duty which the railroad company owed to persons thus using its track, to persons so using a part of its right of way other than its track, this court, in the very recent case of L. & N. R. R. Co. v. Hobbs, 155 Ky., 130, said:

"The company should not be required to safeguard every place of possible danger on its right of way for the protection of persons who must generally take the premises as they find them, nor should it be liable for an accident that happens to a mere licensee who accidently or thoughtlessly falls into some defective or exposed place on its premises."

As appellee was not at the time of the injury on the railroad track or sufficiently near thereto as to be in danger of a collision with the moving train, he is not in a position to invoke in his behalf that rule. In the Hobbs case, the plaintiff was traveling upon a part of the railroad premises, the use of which was of such a character as to have imposed upon the company the exercise of ordinary care in the operation of its trains so as to prevent injuring any member of the public which might have been in danger of a collision with the train, had the pathway been on the track or sufficiently near thereto as to be covered by the train in passing over it. It, however, was off of the track, but on the right of way, and while using it the plaintiff was injured because of its alleged unsafe condition, and which unsafe condition was produced by the company. In the course of the opinion denying a right of recovery, this court said:

"For example, if appellee had been injured by the movement of a train that was being operated without lights or signals or warning of its approach, it might well be said that the company should be required to respond in damages because the long continued use of the premises by the public carried with it the duty on the part of the defendant to prevent affirmative injury by the movement of its trains."

We, therefore, hold that the appellee is not entitled to recover under the acquiescence doctrine of the use of railroad tracks by the public unless, perhaps, his injury was produced by affirmative or positive acts of negligence in causing the piece of iron to fly or be thrown from the train, for which there is no proof in the case.

Many cases are to be found from this court, and indeed it is the doctrine announced by all authorities, that if one is injured while on the premises of the railroad company by being hit with some object flying or thrown from the moving train, when such person is in the occupancy of a place where he has a *right to be,*

the company would be liable to respond to him in damages. Thus, in the case of L. & N. R. R. Co. v. McMillen, the plaintiff was struck by a piece of iron which came from a passing freight train. He was permitted to recover for the injury because he was not only an employe of the company, and was engaged in his work at the time, and therefore had a right to be at that place, but the company furthermore owed him a duty to furnish him a reasonably safe place in which to work. So, when one is similarly injured while on the railroad premises by the express or implied invitation of the company, the latter should respond in damage for the injury. Illustrations of this are to be found when the injury occurs while plaintiff is at the company's depot or on the depot platform under circumstances giving him the *right to be* there, under an implied or express invitation, or when plaintiff is an employe of the company on its right of way. Still another class of injuries for which the company is responsible, occurring in a similar manner, is when the plaintiff is upon the right of way of the company, but also occupying the space covered by a public or private road in which the plaintiff, either in his private right, or as a member of the public, has an easement, and therefore has as much right to be at that place as the company has a right to run its trains over or across the place. The causes of action given to the plaintiffs in these various classes of cases is bottomed on the duty imposed on the railroad company which is somewhat analogous to that of the maxim, *"sic utere tuo ut alienam non ledas,"* in that it should not use its right to operate its trains over its tracks so as to injure another while on its premises, but at a place where he has a *right to be*. This rule, however, has no application to one who is a mere licensee by acquiescence only and through no sort of invitation from the company. The appellee was not at the time of the injury, therefore, at a place where he had a *right to be* so as to demand of the company the exercise of care to prevent injuring him by anything flying from or thrown from the train when passing. In such cases as this where the use of the right of way has been so long acquiesced in by a considerable number of the public, as a walkway, the duty of anticipating the presence of the plaintiff upon the right of way at such place beyond the reach of the train would, perhaps, impose a duty

upon the company to refrain from any positive acts of negligence which would likely result in injury to him while using the pathway; for instance, it could not have permitted anything attached to any part of its train by positive acts of its agents or servants, to extend out over the pathway so as to be likely to collide with and injure him. In other words, it could not negligently widen the wake of the train by attachments thereto so as to endanger any member of the public in the use of its premises at that place; but this does not impose upon it the duty to have its train so thoroughly equipped and all its attachments secure so as to prevent the plaintiff while using the premises at such place from being injured by something flying from the passing train, unless produced by some affirmative or positive act of negligence on the part of the company or its agents or servants connected with the movement of the train.

As we have seen, however, this injury was not produced by any affirmative or positive acts of negligence on behalf of the company or any of those connected with the operation of the train. The only testimony on this point is that about 200 yards south of the place of the accident someone saw a piece of iron dragging by the side of the tender, but what, if any, connection it had with the equipment is not shown, nor is there any fact or circumstance appearing in the testimony from which it might reasonably be inferred the length of time that this pipe had been in the condition as observed by the witness or what caused its loose condition, and the case is evidently not one for the application of the doctrine of *res ipsa loquitur,* because the relationship sustained by the plaintiff toward the company while using the pathway at the place does not bring the case within that rule.

As the appellee failed to show by his proof any violated duty which appellant owed him, the motion of the company for peremptory instructions should have prevailed, and if upon another trial the proof should be substantially the same, and this motion should be made, it should be sustained.

Judgment reversed, with directions to proceed in accordance with this opinion.