## LOUISVILLE & NASHVILLE R. R. CO. v. J. S. MURRAY, Adm.

Eastern Section. July 23, 1927.

Petition for Certiorari denied by Supreme Court, November 19, 1927.

1. **Railroads. Negligence. Evidence. Evidence held sufficient to show railroad guilty of negligence in permitting a wire to dangle from one of its cars.**

    In an action to recover for the death of plaintiff's intestate, where the evidence showed that the intestate, a small boy, was caught by a wire which was dangling from the side of one of defendant's cars, and the evidence further showed that the car had been in charge of a switching crew for some time held that the evidence was sufficient to show the defendant guilty of negligence in not removing the wire.

2. **Railroads. A railroad owes a higher duty to a party on another's premises than to trespassers on its own.**

    Where plaintiff's intestate was standing on property which had been leased by the railroad to another company and was dragged under the defendant's train by a wire fastened to one of its cars, held the defendant's duty to deceased was the same as it was to all other persons on property adjacent to its tracks and this duty was higher than the duty owing to trespassers or even to licensees.

3. **Negligence. Small boy standing nine feet from slowly moving train is not guilty of contributory negligence.**

    Where a small boy was standing nine feet from a slowly moving train and was pulled under the train by a wire attached to one of the cars, held that it could not be said the boy was guilty of contributory negligence in standing this distance from a slowly moving train.

4. **Evidence. Failure to place an eye witness to the accident upon the stand raises a presumption that his testimony would be against the party who could and should have produced him.**

    Where the plaintiff failed to place the brother of deceased upon the stand, who was standing beside deceased when he was killed, held that the failure to produce the witness raised the presumption that his testimony would be against the interest of the plaintiff.

5. **Trial. Instructions. instruction on failure to produce a witness held properly refused.**

    Where the trial court had given an instruction charging the jury in regard to the failure of plaintiff to produce a witness, held that the court properly refused a special instruction on the part of defendant which emphasized this fact and would have been given to the jury at the close of the charge.

Appeal in Error from Circuit Court, Knox County; Hon. A. C. Grimm, Judge.

Affirmed.

Jas. G. Johnson, of Knoxville, for plaintiff in error.

Lee, McDermott & Meek, of Knoxville, for defendant in error.

THOMPSON, J. The plaintiff, J. S. Murray, as administrator of the estate of his deceased son, Lawrence Murray, brought this suit against the defendant railroad company to recover damages for the wrongful killing of said interstate. The jury returned a verdict for $7,000. The trial court suggested a remittitur of $3,000, which was made under protest. Judgment for $4,000 was entered against the railroad company and it has appealed to this court and has assigned errors. The plaintiff has applied for writ of error and has assigned error based upon the suggestion of the remittitur, etc.

The principal assignment of error made on behalf of the railroad company is that there was no material evidence to support the verdict and that peremptory instructions should have been granted in its favor. Viewing the record as we must where the jury has found in favor of the plaintiff and the trial judge has approved the finding, the following is a statement of the facts shown:

The defendant owns a spur or side track at Knoxville which extends eastwardly along the north bank of the Tennessee River from its main line or from its main switch yard. Said track is known as the Milnor Spur, and there are three industries on it. Going eastwardly the first industry was operated by H. C. Milnor; the second by the Knoxville Sand & Lime Company; and the third by Oliver King— the third and last one, of course, being at the east end of the spur. The accident happened at the Knoxville Sand & Lime Company.

The railroad company had leased to the Knoxville Sand & Lime Company a strip or parcel of land on its right of way on each side of said spur, and the Knoxville Sand & Lime Company had full possession and control of those strips or parcels. They (the strips or parcels) began at or extended from points eight feet from the center line between the rails of the spur track, and the one on the south side of the spur track extended down to the river. On this strip on the south side of the spur the Knoxville Sand & Lime Company had located a small building or engine house near the spur, and also a derrick with which it lifted sand from barges in the river and placed the same in cars on the spur. This derrick was ten feet or more south of the spur, and there was a pile of sand near it which extended to the spur. This pile of sand was two or three feet higher than the south rail of the spur and sloped down to it.

The plaintiff, J. S. Murray, was foreman of said Knoxville Sand & Lime Company and had about four men under him. His duties consisted mainly of operating the derrick. He had been working there for about a month prior to the accident, and his children brought him his lunch each day. They were Inez who was twelve years of age; Paul who was nine; and Lawrence who was three and one-half years of age.

On September 3, 1925, they brought him his lunch and then played in the sand pile while he was eating. When Murray finished his lunch and while the other men under him were still eating or resting he began doing some adjusting on the derrick. At this time the three children were still playing in the sand pile and were about nine feet from the spur track. He observed the defendant's switch engine pulling some cars and travelling westwardly along the spur and approaching from the east. He observed that Lawrence (the three and one-half year old one) was on the sand pile about nine feet from the track and was standing by Paul (the nine year old boy). He said to Paul: "You hold Lawrence there until the train passes." He then started to the engine room but looked back in time to see Lawrence being dragged along the track and under the wheels of one of the cars by a wire, one end of which was attached to said car.

The railroad company insists that the proof fails to show that a wire caught the boy or that there was any wire attached to the cars which could have caught him. In fact, it insists that the proof shows that the boy walked down to the side of the cars as they were passing and while putting his hands on the sides of the cars fell under the wheels of the one which ran over him. It is true that no witness testified that he actually saw the wire catch the boy, but they do testify that they saw it dragging him down the track and under the wheels, that one end of it was fastened to his suspenders in the back and that the other was fastened to a standard or standard socket on the side of the car. They described the wire as being heavy and strong and the kind generally used in loading logs for the purpose of holding them in place. They described the car to which it was fastened as being the kind of car in which logs are frequently loaded. They also testified that just an instant before they saw the boy being dragged down the track and under the wheels, he was standing in the sand pile nine feet from the track. One of the defendant's own witnesses testified that immediately after the accident he saw pieces of wire on the track at the point of the accident, and other of the defendant's witnesses testified that there were some short pieces of wire attached to some of the cars although not long enough to have caught the boy. Another of the defendant's witnesses testified that some fifteen or twenty minutes before, as the engine passed with the cut of cars going east (it was returning and going west at the time of the

accident) there was a long wire dangling from the side of one of the cars, although this witness insisted that this wire was not the one which caught the boy.

Without attempting to set out the evidence in detail or to quote therefrom, we think there was ample evidence to support a finding that there was a heavy wire one end of which was attached to a standard socket on the side of the car which ran over the boy, that the other end of which was unfastened and was dangling along the side of the track; that it caught the boy while he was standing on the leasehold property of the Knoxville Sand & Lime Company nine feet from the track; and that it dragged the boy down the track and under the wheels.

But the defendant insists that even conceding the foregoing facts to be true, yet nevertheless a case of liability was not made out because the doctrine of res ipsa loquitur does not apply, and there was no evidence as to who put the wire on the car or who unfastened the loose end, how long it had been there, how long the end had been unfastened, etc. In other words, none of the defendant's employees knew of the wire and there is no proof that it had been there and dangling a sufficient length of time to charge the defendant with negligence in not removing it. Counsel for defendant cite in support of his contention the following cases: Prestar v. Railroad Co., 8 Thompson (135 Tenn.), 42, 185 S. W., 67; C. & E. I. R. Co. v. Reilly, 212 Ill. 506; 72 N. E. 454; L. & N. R. Co. v. Marlow, 169 Ky. 140; 183 S. W. 470; Thomas v. Railroad Co. (Ky.), 105 S. W. 379; L. & N. R. Co. v. Hobbs, 155 Ky. 130; Cleveland etc. R. Co. v. Berry (Ind.), 53 N. E. 415.

On the other hand, counsel for plaintiff cite the following cases: St. Louis, Etc. Ry. Co. v. Jackson, 31 L. R. A. (N. S.) 980 and Note; M. K. & T. R. Co. v. Scarborough, 68 S. W., 196; M. K. & T. R. Co. v. Taylor, 73 Kansas, 482; Blackshear v. Trinity R. Co., 131 S. W. 854; Fletcher v. B. & O. Ry. Co., 168 U. S., 135; St. Louis Etc. R. Co. v. Underwood, 74 Ark. 610.

In the Tennessee case of Prestar v. Railroad Company, supra, the plaintiff was a trespasser pure and simple and could easily have seen the protruding scantling had he taken the trouble to look. And in most of the cases cited by defendant the plaintiffs were either trespassers or at most mere licensees (which facts were stressed in the opinions) and were struck in several instances not by protrusions from the side of the trains but by objects thrown or flying therefrom.

It seems to us that the strongest case cited for defendant is C. & E. I. R. Co. v. Reilly, supra. In that case the plaintiff was standing in a street crossing and was struck by a piece of timber which protruded about eighteen inches or two feet from the side of a freight car in a passing train. It was not shown who loaded the car of

lumber from which the piece protruded and the railroad company did not learn of the accident in time to trace it. The only evidence as to what caused the piece to protrude was the conclusion of a witness that a "sleeper" under the lumber and upon which it had been stacked in the car had slipped out of place. The accident happened in the night time; it was very dark and no one knew for how long a period of time the piece had been protruding. Under these circumstances the court held that the mere fact that plaintiff was struck by the protruding piece of lumber did not make out a case of liability against the railroad under the doctrine of res ipsa loquitur.

In the case at bar the deceased was neither a trespasser nor a licensee on the defendant's right of way. He was on the leasehold premises of the Knoxville Sand & Lime Company, and his status as to that company was of no concern to the railroad company. The defendant's duty to him was the same as it was to all other persons on property adjacent to its tracks, and this duty was higher than the duty owing to trespassers or even to licensees. St. Louis Etc. Ry. Co. v. Jackson, 31 L. R. A. (N. S.) 980, and the many cases cited in the foot-note thereto.

The trial court did not submit the case to the jury on the doctrine of res ipsa loquitur. In fact he charged the jury that: "Before the plaintiff can recover it must appear from a preponderance of the evidence that a cable or wire projected from and by the side of defendant's train; that the defendant knew or, by the exercise of ordinary care, could have known of the existence of said peril; and that said Lawrence Murray was thus caught and killed," and we think there was evidence from which the jury could have concluded that the defendant was negligent in not discovering and removing the wire before the accident.

The accident happened in the daytime and just a few minutes before twelve o'clock noon. The cut of cars, originally consisting of a dozen or more and all of which were empty, had manifestly been made up that morning in the defendant's yard at the west end of the spur, and the defendant introduced as a witness a car inspector who examined the cars very soon after the accident—thus showing that they had an inspector on duty. The wire which caught the deceased, as well as the other wires attached to the cars and about which the defendant's witnesses testified, were large and heavy and were easily discernible. The engine pulled the original cut of cars eastwardly the full length of the spur, and left four or five of them at the Oliver King industry at the east end of the spur. As it passed the Knoxville Sand & Lime Company on this outward journey a witness whom defendant itself introduced saw a long wire dangling from one of the cars although, as has been stated, he testified that this

was not the wire which caught the deceased. But it made such an impression on him that he was looking for it at the time of the accident some twenty minutes later as the engine came back on the return trip with the remainder of the cars and with the intention of leaving some of them at the Knoxville Sand & Lime Company, and other witnesses for the defendant testified that they examined the cars soon after the accident and after the statement had been made that a wire had caught the deceased, and that they saw one or two short wires attached to some of the cars but which could not have caused the accident—all showing that the wires were easily discernible. And there were three or more members of the train crew scattered about in the cars who is seems, to us should have discovered the dangling wire. This crew must have had the cut of cars in charge for at least thirty or forty minutes prior to the accident, and since they were all empties which were simply being distributed for loading to the three industries along the spur, it is barely possible that anything happening on the trip could have detached the loose end of the wire if it had been attached at the beginning of the trip.

It seems to us that under all of these circumstances the jury was warranted in finding that the defendant was negligent in not discovering and removing this large wire which caught deceased who was nine feet from the track and was on the leasehold property of the Knoxville Sand & Lime Company.

Neither do we think that it can be held as a matter of law that there was any proximate contributory negligence which would bar a recovery. The trial court instructed the jury that: "If said Lawrence Murray was permitted or allowed by his father, or by those to whom said father had entrusted the safety of his said child, to approach and come in contact with the side of defendant's freight train, and was thus injured and killed without being caught by a cable or wire projecting from and by the side of defendant's train the plaintiff cannot recover" and, as has been pointed out, there was very material evidence that deceased was standing nine feet from the track at the time he was caught by the wire. We do not see how it could be held as a matter of law that the father or Paul (the nine year old boy) could be held guilty of proximate contributory negligence in permitting the deceased to stand nine feet back from the track while a slow moving engine was passing with a cut of empty cars. If the plaintiff was negligent in leaving Lawrence in the custody of Paul while the engine and cut of cars was passing that negligence under the plaintiff's theory of how the accident happened certainly did not contribute proximately to it.

The defendant also assigns as error that the court erred in refusing to charge the jury the defendant's special request in the following language:

"If you find from the evidence that the plaintiff's minor son living with him and under his control, was an eye witness to the accident and that the plaintiff knew this fact, but failed to put him on the stand, the presumption would be that the evidence of said witness would have been against the interest and insistence of the plaintiff."

The minor son referred to was, of course, Paul the nine year old boy who was standing by Lawrence's side, etc., and it was, of course, a matter to argue to the jury that his testimony would have been against the plaintiff's insistence had he been put upon the witness stand. But we do not think the trial court should have given this special request to the jury because he had already charged practically the same thing and it would not have been fair to the plaintiff for the court to have emphasized at the end of his change the fact that the boy had not been put upon the stand as he would have done had he granted the special request. He had already charged the jury:

"The presumption is that competent and pertinent evidence within the knowledge or control of a party withheld by such party, is against the interest and insistence of the party withholding the same."

It seems to us that this was all the defendant was entitled to, and the assignment will be overruled.

Both parties question the amount of the judgment as finally rendered, i. e. $4,000—the defendant insisting that it is too much—and the plaintiff insisting that there was nothing in the record indicating passion, prejudice and caprice, that the amount of the verdict, i. e. $7,000, did not indicate passion, prejudice or caprice, that it is not the intention of the law that the trial judge should substitute his opinion as to the amount which should be allowed for or in lieu of the opinion of the jury, and, therefore, that the trial court erred in suggesting a remittitur.

We have examined the record carefully and are of the opinion that the merits of the case were fully reached and satisfied by the rendition of the final judgment in the sum of $4,000 and the assignments of error of both parties will be overruled.

It results that in our opinion there was no error in the judgment of the lower court and the same will be affirmed. The costs of the appeal will be taxed against the defendant and the costs of the writ of error against the plaintiff.

Portrum and Snodgrass, JJ., concur.