MUNICIPAL PAVING & CONSTRUCTION CO. v. HUNT.—123 S. W. (2d) 843.

Middle Section. October 8, 1938.

Petition for Certiorari Denied by Supreme Court, January 21, 1939.

J. E. Travis, of Nashville, for plaintiff in error.
Claude Callicott, of Nashville, for defendant in error.

FELTS, J. Walter S. Hunt sued the Municipal Paving & Construction Company and its truck driver, George Corbitt, to recover for

personal injuries and property damages sustained by him in a collision between his automobile and the company's truck. He obtained a verdict and judgment for $2250, $2000 for his personal injuries and $250 for the damages to his automobile.

The company appealed in error and has assigned errors, insisting (1) that a verdict should have been directed for it because there is no evidence that it was negligent and the evidence shows plaintiff was guilty of contributory negligence; (2) that the verdict is excessive; and (3) that the trial judge should have charged a special request tendered by defendants.

It was conceded the truck belonged to the company and was being driven by its servant, Corbitt, upon its business.

The main controversy was as to which side of the highway the collision occurred on, each party claiming it occurred on his right side. There was evidence to support each party's theory, but the defendant insists that the evidence for plaintiff was ''so inherently impossible and so absolutely at variance with the physical facts'' that it should have been disregarded and a verdict directed for defendant.

The accident happened June 24, 1936, about 11 P. M. on the Nashville-Clarksville Highway (No. 112) 7 or 8 miles west of Nashville. Here the highway runs east and west. The two vehicles were meeting, the automobile coming east and the truck going west. The automobile, a Chevrolet sedan, was driven by Hunt, with Mrs. Hoppe riding with him on the front seat on his right. The truck was a Ford V-8 equipped with a bed for hauling gravel and was carrying a load of about four tons of gravel.

The highway had just been constructed and no white mark had yet been painted on its center line. Its paved surface was 20 feet wide, with a shoulder on each side about 10 feet wide. Approaching from the east, as the truck was, there was a slight up-grade and a right hand curve. The curve started about 100 feet or more east of the point where the collision occurred and continued on beyond that point. The car was coming down this grade and its right side of the road was the out side of the curve, while the truck was going up the grade and its right side was the inside of the curve. The lights of both vehicles were on, and there was no other vehicle in sight.

There were three eye witnesses to the accident, Hunt, Mrs. Hoppe and Corbitt. Hunt and Mrs. Hoppe both testified that the car was on its right side of the highway, traveling about 25 miles per hour, and the truck came diagonally across the highway directly in front of the car and struck the car on its left front and side. Hunt estimated the truck was going 40 or 50 miles per hour.

Three other witnesses, who came just after the accident and before either vehicle was moved, testified for plaintiff. They described the positions of the truck and the car and the appearances on the

ground, showing these matters by diagrams, which were sent up as part of the record.

The truck had turned over on its right side, and was lying across the highway at an angle of about 45 degrees. Its front end was toward the southwest and was 4 or 5 feet over the center of the highway and about 5 or 6 feet from the south edge of the paved surface (the truck's left side of the highway). Its rear end was toward the northeast and a few feet from the north edge of the pavement. The truck was badly damaged. The head lights were broken, the left front fender mashed in, the left front wheel driven back under the cab, the tire on this wheel blown out, the left side of the cab crushed in so that the door had to be pried open to get the driver out, and the frame and body were twisted and bent. The right side of the truck was also damaged all the way back to the rear end, both fenders and the running board being mashed or bent in. Defendant's witnesses, however, said the front bumper and the front point of the left fender were not damaged. The load of gravel was scattered all over the road, but most of it was on the north side of the highway and near the shoulder. The truck was painted red. On the right or north side of the highway near where the truck turned over there were red paint marks on the pavement and two or three gashes cut in the pavement. Two of these cuts appear in a photograph, exhibit No. 1 to the testimony of defendant's witness Sessions, and he said there was a third mark near the north curb which the camera "did not pick up."

The automobile had not turned over but had nearly changed ends so that the front was toward the northwest and the rear toward the southeast. Its position was about at right angles to that of the truck, but about 25 feet past or east of the front end of the truck. The rear left wheel of the car was on the south shoulder and the right rear wheel on the paved surface. The right front wheel was a few feet south of the center of the highway and the left front wheel was nearer the south edge of the pavement. A photograph sent up shows the car was almost demolished. The damage extended from the left front of the radiator on back to the left rear door. On the south side of the paved surface and on the south shoulder were broken glass, splintered wood, and other parts of the wreckage of the car.

 (1) Defendant is not asking us to weigh this evidence. It recognizes we can not do that or disturb a verdict which is supported by any material evidence. Nor does it deny the general rule, arising out of the constitutional right of trial by jury, that, upon defendant's motion for a directed verdict, all the evidence must be viewed most favorably to plaintiff and that which supports his rights taken as true and all countervailing evidence discarded. Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn., 551, 556, 249 S. W., 984, and cases there cited. Its insistence is that this rule does not

384

apply to this case; but that the case is governed by the rule that evidence which is "inherently impossible and absolutely at variance with the physical facts" will be treated as no evidence and a verdict directed in spite of it. N., C. & St. L. Railway v. Overcast, 3 Higgins 235; Nashville, C. & St. L. Railway v. Justice, 5 Higgins 69; DeKalb County v. Tenn. Elec. Power Co., 17 Tenn. App., 343, 350, 67 S. W. (2d), 555; Oliver v. Union Transfer Co., 17 Tenn. App., 694, 698, 71 S. W. (2d), 478; Standard Oil Co. v. Roach, 19 Tenn. App., 661, 666, 94 S. W. (2d), 63.

This rule was recently considered by our Supreme Court in Southern Ry. Co. v. Hutson, 170 Tenn., 5, 91 S. W. (2d), 290. It was there said [page 291]:

"Conceding the soundness of the rule as applied in this line of cases, this distinguishing element must be kept in mind. The testimony under review is not destroyed by conflicting testimony, never mind how fully supported, when the test is that of the credibility of the witnesses. That improbability of the truth of the plaintiffs' testimony which justifies rejection under this rule may not be rested upon either a mere numerical preponderance, however great, or upon any theory involving consideration of the comparative credibility of the witnesses. The palpable untruthfulness requisite must be (1) inherent in the rejected testimony, so that it contradicts itself, or (2) irreconcilable with facts of which, under recognized rules, the court takes judicial knowledge, or (3) obviously inconsistent with, contradicted by undisputed physical facts."

The physical facts which are said to destroy the evidence for plaintiff are that most of the gravel was on the truck's right side of the highway; that the gashes in the pavement were on that side; that the front wheel of the truck was driven back under the cab and the tire destroyed; that no part of the front of the truck was damaged, but its left side near the cab was mashed in; and the positions of the vehicles after the accident. It is argued that the presence of the gravel on the right side of the highway shows that the collision occurred on that side; that the gashes in the pavement were cut by the rim of the left wheel when it was knocked down, and the truck veered to its left across the center of the highway because it was impossible to steer it; that the lack of any damage to the front and the damage to the side of the truck show the truck did not strike the car but the car ran into the side of the truck; and that all these things are physical facts which demonstrate that the accident could not possibly have happened as Hunt and Mrs. Hoppe testified it did, and which destroy their testimony so as to leave nothing to submit to the jury.

We do not think so. Under the rule laid down in Southern R. Co. v. Hutson, supra, in order to destroy their testimony the physical facts not only must be obviously inconsistent with, or contradic-

tory of, such testimony, but must be also undisputed. Where the existence of the physical facts themselves depend upon the testimony of witnesses, there is but a conflict of testimony against testimony, which is a matter for the jury to resolve; for manifestly testimony about an alleged physical fact is no more to be taken as true than testimony about any other fact in controversy. See Carter v. Kelsey Wheel Co., 168 Tenn., 262, 263, 77 S. W. (2d), 449, 450.

 The physical facts relied on by defendant, we think, were neither undisputed nor inconsistent with, or contradictory of, the testimony for plaintiff. It is true most of the damage was to the left side of both vehicles; but the statements of defendant's employees that there was no damage to any part of the front of the truck was not undisputed. Plaintiff's witnesses said the front head lights of the truck were broken, the left front fender mashed in, and the left front wheel driven back under the cab, and the front axle bent. All this would indicate the vehicles side-swiped each other; but would not indicate whether this occurred on the right or left side of the center of the highway. The presence of most of the load of gravel on the right side is not necessarily inconsistent with plaintiff's theory. The truck bed was a long one, and most of the load was toward the rear end. Upon impact of the front end of the truck with the car the rear end went over to the right with great force, which would throw the gravel over that way. Neither are the gashes in the pavement on the right side of the highway inconsistent with plaintiff's theory. The rear end of the truck turned over on that side and these gashes were likely made by projecting parts of the side of the truck after it turned over. One witness, who saw the ground before the vehicles were moved, said the end of the truck's axle made the marks. Defendant's claim that the rim of the left wheel made the gashes meets with some difficulties. There were two or three parallel marks, which could hardly have been made by only one wheel broken down; and though the tire was blown out it does not definitely appear that it was off the rim.

In 10 R. C. L., 1009, it is said: "So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other." In the note in 15 Ann. Cas., 1195, it is said: "The study of accidents shows strange and inscrutable results, sometimes stranger than fiction" (citing cases). In American Tobacco Co. v. Zoller, 6 Tenn. App., 390, 393, the Court observed:

"The principal contention of the defendants is that the physical facts—particularly the courses taken by the two cars after the accident, and the force with which the Zoller car struck the telephone pole —contradict and refute the plaintiffs' evidence to such an extent that

it constitutes no material evidence to support the verdicts. It is true that the courses taken by the two cars after the collision would seem to corroborate the defendants' version rather than the plaintiffs, but this was a matter for the jury. It is well known that cars sometimes take peculiar and unexpected courses after accidents, and we cannot say that the courses taken by these two cars so clearly refutes the evidence of the plaintiffs as to render the same nugatory."

All these matters urged by defendant as physical facts destroying the testimony for plaintiff were, we think, but matters of circumstantial evidence, which at most only furnished a basis for an argument against the weight of the evidence supporting plaintiff's theory of the accident. There were other circumstances, such as the broken glass, splintered wood, and the wreckage from the car on the left side of the road, and the fact that both vehicles after the accident came to rest on that side, which tended to support plaintiff's theory. All these matters, we think, were properly submitted to the jury as circumstantial evidence along with the testimonial evidence; and the learned trial judge did not err in refusing to direct a verdict for defendants.

(2) Nor do we think the verdict excessive. No complaint is made as to the amount allowed for the car. Hunt suffered numerous abrasions and contusions all over his body, and nine or ten lacerations about his head and face, which required forty or fifty stitches to close. He lost a large quantity of blood, and suffered from shock. He has several permanent scars about the face and side of the head, a loss of sensation in the area around the right ear, and a loss of the use of the muscles about his lip; and there was injury to the parotid gland, which causes a feeling of pain like mumps when he undertakes to eat acid-tasting foods. He was a member of the Fire Department of Nashville and was cared for at the city hospital without charge; but his doctor's bill and loss of salary while disabled were about $150. As conceded by defendant's counsel, "mental anguish and physical pain and suffering cannot be weighed or measured in exact terms."

The amount of compensation one is entitled to recover for personal injuries wrongfully inflicted upon him by another is primarily a matter for the jury, guided by proper instructions from the trial judge. After they have found such amount and the trial judge has exercised his discretion and approved it, this court will not disturb it, unless it is fairly evident that he failed to keep the jury within reasonable bounds. Reeves v. Catignani, 157 Tenn., 173, 7 S. W. (2d), 38; Power Packing Co. v. Borum, 8 Tenn. App., 162, 180; National Funeral Home v. Dalehite, 15 Tenn. App., 482, 499; Greyhound Lines, Inc. v. Patterson, 14 Tenn. App., 652, 667.

For these reasons we do not think we should disturb the amount of the verdict.

(3) The special request which defendant insists the trial judge should have given the jury was:

"I further charge you, gentlemen of the jury, that where testimony introduced is shown by the physical facts and surroundings to be absolutely untrue or when it is so inherently improbable as that no reasonable person can accept it as true or possible, it is your duty to disregard the testimony and to adopt the physical facts as shown. The plaintiff has testified that he was driving with the right front wheel of his car on the shoulder on his right hand side and the truck came across the pike and struck his car at an angle when the truck was running at the rate of forty-five or fifty miles per hour. If you find from the physical facts showing where the car was located after the accident and where the truck was located after the accident that the testimony of the plaintiff was untrue, or inherently improbable, then it is your duty to disregard the testimony of the plaintiff and accept the physical facts."

We think the general charge, which was full, fair and accurate, was all that was called for by the evidence; and that this request, if given, would have been harmfully misleading because it was based upon the assumption, which we have held to be erroneous, that the testimony for plaintiff was "shown by the physical facts and surroundings to be absolutely untrue" or "so inherently improbable" that no reasonable person could accept it as true or possible. Giving such a request would have been clearly erroneous. Gulf Compress Co. v. Insurance Co., 129 Tenn., 586, 596, 167 S. W., 859; Louisville & N. R. Co. v. Murray, 6 Tenn. App., 374, 380; Louisville & N. R. Co. v. Evans, 13 Tenn. App., 57, 90; Union Bus Terminal v. Mennen, 14 Tenn. App., 551, 554, 555.

All of the assignments of error are overruled, and the judgment below is affirmed. Judgment will be entered here for plaintiff against the Municipal Paving & Construction Company for $2,250, with interest from the date of the judgment below, and the costs below, and against that company and its surety on its appeal bond for the costs of this appeal in error.

Faw, P. J., and Crownover, J., concur.