IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 9, 2007 Session

## TONYA L. MERRICK v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Circuit Court for Davidson County**
**No. 03C-782    Walter Kurtz, Judge**

---

**No. M2006-01169-COA-R3-CV - Filed on August 9, 2007**

---

This appeal involves a motor vehicle accident between a vehicle driven by Appellant and a Metropolitan Nashville school bus.  The case was tried non-jury, and the trial court, based primarily upon the testimony of an alleged eye witness, decided the case in favor of Defendant.  Finding the evidence of the alleged eye witness to be inherently improbable, we reverse the action of the trial court and remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined.  FRANK G. CLEMENT, JR., J., filed a dissenting opinion.

Tonya L. Merrick, Nashville, Tennessee, *pro se*.

Karl Dean, Director of Law; James E. Robinson, Lora Barkenbus Fox, and John L. Kennedy, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

**OPINION**

The automobile wreck in issue occurred on December 13, 2002.  Tonya Merrick ("Appellant") alleges in her Complaint that she was operating her motor vehicle northbound on Hopedale Road in Davidson County, Tennessee.  Prior to the accident, Appellant saw an orange school bus turn from Flora Maxwell Street to its right to proceed southbound on Hopedale Road.  These initial facts are undisputed; but, from this point on, everything is disputed.  Appellant asserts that the school bus, in making its right turn, moved far over into the northbound lane of Hopedale Road, forcing her to swerve to the right whereupon she struck a utility vehicle parked on the east side of Hopedale Road.  Appellee, however, asserts that the school bus was stationary with its stop sign extended and that Appellant's vehicle slid off the road as it passed the bus and struck the utility vehicle.  Testimony in the case was limited to that of Jerry Moreland, a paramedic with the Metropolitan Fire Department; Appellant; and alleged eye witness, Danny Ferrell.  The testimony

of Appellant substantially conformed to the allegations of her Complaint. She testified that she was operating her automobile at about 2:15 p.m. on December 13, 2002, on Haywood Road and turned right onto Hopedale Road traveling then in a northern direction. She testified that the school bus turned from Flora Maxwell Road to go southbound on Hopedale Road and that in making the right-hand turn, pulled into her lane of travel. She was traveling 25 to 30 miles an hour, and when she saw the school bus in her lane of travel, she swerved to the right and her vehicle struck a utility vehicle parked on the east side of Hopedale Road. Her head struck the windshield, and her chest hit the steering wheel. She remained in her vehicle until Metropolitan Government paramedical personnel arrived at the scene. She testifies that a 16-year-old girl riding the school bus screamed, but the bus continued without stopping. She testified that a man whose identity she did not know came up to the car and held her hand until the paramedics arrived. She was then transported to the emergency room at Southern Hills Hospital.

Because time is the crucial factor involved in this case, and particularly as it relates to the usefulness of the testimony of the alleged eye witness Ferrell, it is important to consider the evidence of time as it relates to the accident, the arrival on the scene of paramedics, and Plaintiff's admission to Southern Hills Hospital contrasted to Ferrell's departure from work, his arrival at his home, and his afternoon walk when he allegedly witnessed the accident.

Paramedic Moreland testified, and business record exhibits to his testimony established that the paramedics arrived at the scene of the accident at 14:50 hours (2:50 p.m.). They departed the scene with Appellant in the ambulance at 14:54 hours (2:54 p.m.) and arrived at Southern Hills Hospital at 14:58 hours (2:58 p.m.). The exhibited medical records from Southern Hill Emergency Room also indicate that Appellant arrived at the emergency room at 14:58 hours (2:58 p.m.).

The only witness called to testify by Defendant was Ferrell. He testified that he lived in the area of the accident, and while walking his dog on the afternoon of December 13, 2002, he witnessed the accident. He testified that:

Q.      Can you describe where the bus was?
A.      The bus was sitting there with a stop sign. It had just turned off Flora Maxwell and turned on Hopedale. It would be facing Hopedale and coming toward where, you know, I was walking. I was walking south toward Hopedale, is what I was walking toward; and like I said, she started sliding on this side of Hopedale and Hummer, and slid past me and slid into my neighbor's van.
Q.      So when you saw plaintiff's vehicle, was the bus stationary at that point?
A.      The bus was stopped with the stop sign out, and it was facing this direction when I seen the bus. I took the dog and hurried on up to see waht was going on because I heard the crash. I looked up, she's crashed. The bus is sitting there with the stop sign.
Q.      Can you describe the road conditions on that day?
A.      It was misting rain so it was kind of wet, dewy out; but it wasn't raining hard. It was like a misty rain. It was misting so much it looked like fog, that type rain.

Q.      Did you hear anything at this moment?

A.      Yes. Like I said, that's what startled me is the sound of a squealing tire. You have to have dry pavement in order to make a tire squeal. It was wet.

MR. STOLTE: I'm going to object to this line of testimony. There's no foundation.

THE COURT: Overruled.

THE WITNESS: When she locked her brakes down she caused the tires to squeal. That's what startled me, and I said, oh, man, because it's wet outside, and you have to have dry pavement to make a tire squeal, and she had locked up her brakes. She had her brakes completely locked down at that point.

BY MR. ROBINSON:

Q.      How fast was she traveling?

A.      She was going over 30 miles an hour.

MR. STOLTE: Objection.

THE COURT: I think the cases are legion that a lay witness can estimate speed, so overrule. Go ahead.

BY MR. ROBINSON:

Q.      Did you hear anything else other than the squealing tires?

A.      Her slamming to the back of that van.

When asked if the school bus had done anything wrong, Mr. Ferrell answered, "No."

The cross-examination of Ferrell lays bare that which is determinative of this case. Ferrell worked at Mid-Tenn Ford Truck Sales and testified:

Q.      What are your hours?

A.      From seven to four.

Q.      What time were you working the day of the accident, December -- is it 12, 13?

A.      They say four o'clock, but it isn't true. I left work that day at three forty-five.

Q.      Okay. If the time records from your work indicate that you clocked out at exactly a couple of hundredths of a minute before four o'clock, that would be incorrect? Is that what you're saying?

A.      I'm saying those right there are not correct, because I do not think those are the right time cards for that day.

Q.      Be that as it may, you say you left at three forty-five?

A.      Yes.

Q.      So you left work at three forty-five in the afternoon?

A.      Uh-huh.

Q.      Is that a yes?

A.      Yes, sir, that's correct.

Q.      How far is it from your workplace to home?

A.     I can be at my house in 12 minutes, and that's not going over the speed limit. I've checked it several times.

Q.     So what time did you arrive home?

A.     A few minutes before four o'clock.

Q.     How long did it take you to get your dog out?

A.     Don't take me any time. I pull straight in. The leash is hanging on the fence. I believe I started out the driveway with him, was going to go around my little path that I go every afternoon with him for 30 minutes and then be back at the house.

. . .

Q.     At this point you understand the significance of the oath in this situation, don't you?

A.     Yes, sir.

Q.     If an ambulance driver, Mr. Moreland, testified that he removed Ms. Merrick from the scene of the accident approximately an hour before you got -- before you got off of work that day, would he be incorrect?

A.     I don't know, sir. I don't know if his records are correct or not. I wasn't there with him.

Q.     If the records of Southern Hills Medical Center indicated that Ms. Merrick was treated at a quarter after three, 20 minutes after three for this accident, which was 15 minutes before you got off of work, are they incorrect on their time, too?

A.     I don't know, sir. All I know is what I seen that day.

Q.     And you saw this accident happen after four o'clock?

A.     Yes, sir. It was after four o'clock.

The entire case for Defendant rests upon the testimony of Ferrell, and the record indicates that the trial court struggled valiantly with the time discrepancy before accepting the testimony of Ferrell.

THE COURT: In my experience there's also a fog for accidents and violent crimes. Sometimes you just can't reconcile the time people remember. Are you really asking me to conclude that Mr. Ferrell is just an outright perjurer, that he's walked in here, and he's made this thing up out of whole cloth?

MR. STOLTE: Your Honor, that's the only viable explanation.

THE COURT: What will be his motive?

MR. STOLTE: I have no idea, your Honor. I can't discern that.

THE COURT: That's kind of hard.

MR. STOLTE: I agree, I agree, but the proof indicates that through his own testimony he indicates that he didn't leave work that day until the time after Ms. Merrick was in the emergency room. So --

THE COURT: Okay.

MR. STOLTE: If he sat here and said I got out of work early that day, something, something, but none of the proof indicates that.

THE COURT: It doesn't occur to you that the time sheets might be wrong?

-4-

MR. STOLTE: I asked him that, and the affidavit of the custodian of records indicate they're accurate records. His signature is on his time card. If they were wrong, he would have testified to that; and even if they were wrong, which we conceded a little bit, he said the earliest he would have left would be three forty-five that day, and his deposition, which is on file with the Court, indicates that he saw this accident happen a little bit after four o'clock.

Now, I have no explanation for any motives or any reasons for this. I mean, whether or not his wife --

THE COURT: Whatever happens in this case, I give you and A-plus for good detective work.

MR. STOLTE: Thank you, thank you. But it seems to me that his testimony just cannot be right. His testimony about this accident is incorrect, whether it's in regard to his timing or how he saw this accident happen.

Finally, the trial court announced its decision holding:

THE COURT: Well, I think Mr. Ferrell is confused, but do I think that Mr. Ferrell is just an out-and-out perjurer? We're not talking about somebody who would see something through a psychological screen. We're talking about somebody who would come in and say he witnessed an accident, which he never saw; and I just don't think so.

I mean, I realize there's a conflict with the time sheets, but again with my reference as to the fog of war and reliance that that -- do I find him just an out-and-out perjurer based upon inconsistency with his time sheet that took place three years ago or was recorded three years ago? I don't think I can find that.

If I consider Mr. Ferrell's observations, do I know -- do I as a judge have a feeling or a sense that I know by a preponderance of the evidence what happened out there, what was a dynamic that caused this accident, and the answer is no; and when I say that the answer is no, then I refer to the burden of proof, and if the plaintiff doesn't carry it, then the plaintiff has to lose.

Do I feel -- there's no person who wouldn't feel compassion to the plaintiff here who is obviously injured in this accident, but am I convinced that the plaintiff has proved this to be the fault of the bus driver by a preponderance of the evidence, I must regretably say the answer is no. The judgment here is for the Metropolitan Government. That's it.

Judgment was entered in favor of Appellee, and Appellant filed a timely appeal.

The issue presented for review as stated by Appellant is, "Whether the trial court erred by ruling against Appellant with findings of fact and credibility pertaining to Appellee's sole witness that are not supported by the evidence and/or whether this ruling preponderates against the weight of the evidence presented at trial."

Ferrell simply could not have witnessed the accident in issue under the undisputed proof disclosed by this record. With all of the deference which must be accorded the trial court as to the credibility of witnesses, we are not dealing with disputed credibility questions but rather with an undisputed time frame that is established by Ferrell's own testimony. Even if one accepts the premise that the time sheet of Ferrell's employer is less than conclusive as to the time on December 13, 2002, that Ferrell left his employment, Ferrell still affirmatively testifies that he left his employment at 3:45 p.m. on that afternoon. He also affirmatively testifies that it took him 12 minutes to reach his home and depart therefrom with his dog for their afternoon walk. He further asserts affirmatively that the accident happened after 4:00 p.m. on December 13, 2002. All of the evidence in the record establishes that the accident had already occurred at 2:50 p.m. on December 13, 2002, when the paramedics arrived on the scene; that they had departed the scene with Appellant in the ambulance at 2:54 p.m.; and arrived at Southern Hills Emergency Room at 2:58 p.m. Thus, the evidence is undisputed that Appellant arrived at the emergency room following the accident 47 minutes before Ferrell clocked out of his place of employment. The only dispute in the testimony is whether by Appellant's evidence, Ferrell clocked out of his employment a few seconds before 4:00 p.m., or by Ferrell's own testimony, he left work and clocked out at 3:45 p.m. The discrepancy is immaterial because even taking Ferrell's own sworn testimony as true, he could not have witnessed the accident.

As the trial court observed, this record does not supply a motive for Ferrell to testify falsely and if the time of his departure from his employment was materially disputed, the question for the trier-of-fact is made in the first instance. However, when it is the witness' own testimony that establishes the impossibility, what else can be said?

Absent the testimony offered by Ferrell, the sparse evidence as to the facts of the accident are limited to the testimony of Appellant. The credible testimony thus preponderates against the findings of the trial court.

Also implicated under these circumstances is the rule iterated in *Mun. Paving & Constr. Co. v. Hunt*, 123 S.W.2d 843, 845 (Tenn.Ct.App.1938), concerning evidence that is inherently impossible and at variance with the physical facts. Under such rule, the proposed evidence is no evidence at all. *Mun. Paving & Constr. Co.*, 123 S.W.2d at 845. The Supreme Court delineated the limited scope of this time-honored rule in *S. Ry. Co. v. Hutson*, 91 S.W.2d 290 (Tenn.1936).

> Conceding the soundness of the rule as applied in this line of cases, this distinguishing element must be kept in mind. The testimony under review is not destroyed by conflicting testimony, never mind how fully supported, when the test is that of the credibility of the witnesses. That improbability of the truth of the plaintiffs' testimony which justifies rejection under this rule may not be rested upon either a mere numerical preponderance, however great, or upon any theory involving consideration of the comparative credibility of the witnesses. The palpable untruthfulness requisite must be (1) inherent in the rejected testimony, so that it contradicts itself, or (2) irreconcilable with facts of which, under recognized rules,

the court takes judicial knowledge, or (3) obviously inconsistent with, contradicted by, undisputed physical facts.

91 S.W.2d at 291.

The testimony of Ferrell contradicts itself when he testifies to witnessing the accident at the same time he is testifying to a time frame that makes such witness impossible.

It may well be, as observed by the trial court, that Ferrell was "confused," but there is nothing confusing about his positive testimony that he clocked out from work at 3:45 p.m. on December 13, 2002.

The judgment of the trial court is reversed and the cause remanded for a new trial. Costs of appeal are assessed to Appellee.

_____
WILLIAM B. CAIN, JUDGE