# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs June 12, 2012

## STATE OF TENNESSEE v. TRUTONIO YANCEY
## AND BERNARD McTHUNE

### Appeal from the Criminal Court for Shelby County
### No. 10-02855     J. Robert Carter, Jr., Judge

---

### No. W2011-01543-CCA-R3-CD  - Filed September 17, 2012

---

A Shelby County jury convicted appellant Trutonio Yancey of aggravated robbery, especially aggravated kidnapping, carjacking, and employing a firearm during the commission of a dangerous felony.  The jury also convicted appellant Bernard McThune of aggravated robbery.  The trial court sentenced appellant Yancey to an effective twenty-year sentence and sentenced appellant McThune to a twelve-year sentence.  In this consolidated appeal, both appellants challenge the sufficiency of the convicting evidence.  In addition, appellant Yancey argues that the trial court erred in not requiring the State to elect upon which dangerous felony it relied for the employing a firearm during the commission of a dangerous felony charge, and appellant McThune argues that the trial court erred by not applying mitigating factors when sentencing him.  After reviewing the record, the parties' briefs, and applicable law, we affirm appellant Yancey's convictions for aggravated robbery and especially aggravated kidnapping.  Discerning error, we reverse appellant Yancey's convictions for carjacking and employing a firearm during the commission of a dangerous felony and remand the case for a new trial.  We affirm appellant McThune's conviction and sentence.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in part; Reversed in part; Remanded

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Stephen C. Bush, District Public Defender; Tony N. Brayton, Assistant District Public Defender (on appeal); Jim Hale and John Zastrow, Assistant District Public Defenders (at trial), Memphis, Tennessee, for the appellant, Trutonio Yancey.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Bernard McThune.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Anita Spinetta, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts

A Shelby County grand jury indicted appellant Yancey for aggravated robbery, especially aggravated kidnapping, carjacking, and employing a firearm during the commission of a dangerous felony. The grand jury also indicted appellant McThune for aggravated robbery. Appellants were tried together before a jury. The parties presented the following evidence at the jury trial:

The victim, Demario Brown, testified that on September 19, 2009, he was visiting his friend, appellant McThune, who was wheelchair bound. The victim said appellant McThune was "[j]ust hanging out," and the victim asked him if he wanted a drink. Appellant McThune told the victim to purchase a bottle of liquor from the store. As the victim was leaving to go to the store, a man whom the victim knew as "Blow," arrived at appellant McThune's house and spoke to appellant McThune. After Blow left, the victim told appellant McThune that Blow "wasn't straight." The victim explained that meant Blow was not "cool to kick [it] with."

The victim went to the liquor store, purchased a bottle of Crown Royal whiskey, and returned to appellant McThune's house. When he returned, appellant Yancey, whom the victim knew as "Blue-Black," and another man, whom appellant knew as "Beball," were at appellant McThune's home.[1] The victim stated that he met appellant Yancey through appellant McThune and had known him for "a couple of years." The four men went inside appellant McThune's house and entered his bedroom. The victim took a couple of sips from the bottle of whiskey and passed it to appellant McThune.

Appellant McThune began discussing the victim's comment about Blow not being "straight." Appellant Yancey and Beball were sitting behind the victim. As the victim and appellant McThune were discussing Blow, appellant Yancey and Beball attacked him. The

---

[1] Because the given names of "Blue-Black" and "Beball" are not contained in the record, this court will refer to those individuals by their nicknames.

victim said, "[T]hey just came up with the guns, laid me down on the bed, choking me, started shooting the gun in the house, pulling my clothes off, going in my pockets, throwing my money, my phones and everything on the bed." The victim testified that appellant Yancey was on top of him and "in [his] face" while he was on the bed. He further testified that Beball had a ".45 gun." He did not know what type of gun appellant Yancey had. The victim had previously seen appellant Yancey's gun laid on the dresser and bed in the room, and he surmised that it was a ".9 or a .45." Appellant Yancey shot his gun on the side of the victim's head. According to the victim, the men apparently thought he said they were the police. The victim said he and appellant Yancey were on the bed. Beball, who was standing beside the bed, took off the victim's shoes and pants and patted him down. The victim stated that he had two cellular telephones and approximately $2,600 in cash in his pockets. He explained that he had such a large amount of cash because he had cashed two payroll checks that day. According to the victim, the men did not know he had the money.

Beball threw the victim's belongings onto the bed as he took them, and appellant McThune picked them up off the bed and placed them on his lap. The victim asked appellant McThune, who was sitting in his wheelchair at the edge of the bed, if he was going to allow the men to rob him. Appellant McThune responded that he did not have anything to do with what was occurring, and the victim should not have said what he had said. The victim said during the robbery, appellant Yancey "shot at least three or four times beside [the victim's] head and dropped the clip . . . ." After dropping the clip, appellant Yancey asked appellant McThune to get another clip for his gun from the kitchen table. Appellant McThune wheeled into the kitchen, retrieved the clip, and gave it to appellant Yancey.

Appellant Yancey and Beball lifted the victim off the bed and walked him outside at gunpoint. Appellant McThune's girlfriend, who was in the house during the robbery, told the men that the victim had locked his vehicle and that the keys were inside the vehicle. The victim explained that he left the car keys inside of the car and only carried the keyless entry device inside appellant McThune's house. The men went back inside to get the keyless entry device, and appellant Yancey unlocked the vehicle. They then forced the victim, who was wearing boxer shorts and a t-shirt, into the trunk at gunpoint; started the victim's car; and began driving.

The victim testified that he was nervous and started feeling around in the trunk for something with which to hit the lock. The victim said they were driving on interstate 240 when the men turned down the radio volume, and he heard them "saying something like I'm probably going to have to kill him or something." The victim found a four-way lug wrench in the trunk and beat the lock with it. The victim said appellant Yancey and Beball must have heard him hitting the lock because one of them fired a gunshot into the backseat.

The victim said it got "quiet and still"inside the vehicle. He felt around the trunk with his hand and pulled a wire, which caused his trunk release to open. No cars were behind them, and the victim jumped out of the trunk and rolled a few times. The vehicle was still moving when the victim jumped from it. When the victim arose, he saw that the driver of the vehicle had applied the vehicle's brakes, so he ran to an Exxon station. He tried to borrow a cellular telephone at the Exxon, but nobody would allow him to use one. An Exxon employee noticed the victim and called the police. The victim said he had a few scars on his arms, legs, and ankles from jumping out of the vehicle.

The victim identified photographs of appellant Yancey and BeBall that the detectives showed him and stated that they were the men who robbed him. The victim also identified photographs of his vehicle and the four-way lug wrench. The victim said investigators found shell casings on the floorboard of his vehicle that he did not leave there.

On cross-examination by appellant Yancey's counsel, the victim testified that he arrived at appellant McThune's house around 5:00 p.m. He stayed for approximately three or four minutes before he left to go to the liquor store. He said it took him approximately three minutes to get to the liquor store, and he stayed at the store for about three minutes. The victim said the robbery started about ten minutes after he entered appellant McThune's house. He denied that he smoked marijuana while at the house. When asked whether he recalled stating to the police that "we [were] all sitting in the house getting high and drinking[,]" the victim answered, "No. I said we [were] drinking. They . . . they [were] all getting high." He said the officers probably left a couple of words out of his statement. He knew that he had not been smoking marijuana that night because he was on probation at that time and "was getting around the drug test." The victim had read and initialed each page of his statement. He could not recall at what time he made his statement. He said the police went to appellant McThune's house the night of the incident.

The victim recalled testifying at the preliminary hearing. He did not remember testifying that he was at appellant McThune's house for a couple hours or that he stated that they had been drinking and smoking marijuana. When shown the transcript of the preliminary hearing, the victim stated, "If it's on the paper[,] I guess that's what I said." When questioned further about his stating to police that the men had been drinking and smoking marijuana the night of the incident, the victim said, "If it's on there I may have made that statement[,] but I replied it was them smoking weed."

The victim had visited the house often, each time "hang[ing] out" in appellant McThune's bedroom. The victim said appellant Yancey lived at the house with appellant McThune. He recalled seeing appellant Yancey with a black ".45 gun" often and said appellant Yancey kept it on a dresser. According to the victim, appellant Yancey must have

-4-

had his gun on him when the victim entered the room the day of the robbery because he did not see the gun lying on the dresser. The victim denied telling the police that appellant Yancey had a .45 caliber automatic handgun and Beball had a .9mm or a .45. He further denied telling them the guns were silver with black handles. He did not recall what appellant Yancey and Beball were wearing, but he did not see any bulges in their clothing to suggest that they were carrying guns.

The victim testified that he was standing at the edge of the bed, "[s]o when everything happened [appellant Yancey] didn't have to do nothing [sic] but just push." The victim told police that "Blue-Black" had robbed him, but he testified that he also knew appellant Yancey as "Tony Ford." The victim testified that appellant Yancey and Beball did not push him into the trunk of the car. He explained that he climbed inside the trunk because the men had guns aimed at him. The victim denied telling police that appellants Yancey and McThune walked him outside at gunpoint and forced him in the trunk. He testified that appellant McThune remained inside when the men went outside to the victim's car. He remained in the trunk from the time they left South Goodlett Street until they reached the Millbranch Road exit of interstate 240.

The victim said he worked with knives and attempted to use a knife to pry open the hook on the trunk. When that did not work, he decided to use the four-way lug wrench to beat the lock. While he was in the trunk, the victim also attempted to tear his seat open to get to a phone that he kept in his armrest. He said the shot the men fired into the backseat did not hit him. The petitioner estimated that the vehicle was traveling 60-70 miles per hour when he jumped out of the trunk.

The victim said that when he spoke with investigators, he gave them appellant McThune's name. The investigators found a utility bill in appellant McThune's name and retrieved his address from it. They also found a picture of appellant McThune, which the victim used to identify him. The police drove the victim to the address they had found, and the victim told them that was where the robbery happened.

The victim recalled investigators asking him how he got out of the trunk. He said the answer reflected on his statement, he "hit it with . . . something," was inaccurate. He said he did not read his statement after the police wrote it. He just "signed and initialed it because [he knew he] made a statement."

The victim initially told police that he did not know Beball's name. The victim also told police a man named Tony was involved. He was unsure of Tony's last name and told them that it might have been Ford. The police showed the victim a picture of someone with the name Ford, but he was not the man who had robbed the victim.

On cross-examination by appellant McThune's counsel, the victim testified that he knew he was not smoking marijuana the night of the robbery because he was on probation and subject to random drug tests. When asked about his statement that they were "all sitting in the house getting high and drinking," the victim said the officer probably transcribed his statement incorrectly because he was talking fast. He said he signed the statement without reading it because he was "exhausted, tire[d], [and he] didn't have nothing [sic] on but boxing drawers . . . ."

The victim stated that he left the bedroom and went to the restroom after he drank the whiskey. He thought that the men decided to rob him when he left to use the restroom. The victim again denied that appellant McThune walked him outside of the house at gunpoint and forced him into the trunk. He said it would have been impossible for appellant McThune to walk him outside because appellant McThune was wheelchair bound.

The victim estimated that he arrived at appellant McThune's home sometime after 5:00 p.m. He further estimated that he was in the trunk of the vehicle for about six minutes. He did not recall signing his statement at 3:35 a.m. the following morning. The victim said the police brought him to the police station, researched the suspects, brought him to appellant McThune's house, and questioned him before he signed his statement.

The victim said he called Detective Smith with the Memphis Police Department regarding this case. The victim denied referring to appellant McThune as "Bernard Nathan." He said he did not know the suspects' last names when he went to the police station and "tried to pronounce McThune but couldn't come up with it." The victim further denied telling Detective Smith that he had been smoking marijuana the day of the incident.

On redirect examination, the victim testified that he dropped out of school in the eighth grade but had a diploma. When the police officer arrived at the Exxon station, he asked the victim what happened, why he ran, and how he got injured. He said when he talked to the detectives, "[t]hey didn't do a lot of asking, [he] really told them what happened."

The victim explained that his saying Blow was "not straight" was an insult. He agreed that his saying that "could put [him] in jeopardy . . . in the community." He denied fabricating his story.

Memphis police officer David Galloway testified that he became involved in the investigation of this case when the victim's vehicle was towed to the crime scene office for processing. Officer Galloway processed the vehicle for fingerprints, photographed the vehicle, and collected evidence from the vehicle. He stated that he found a spent ".45 auto

casing" on the floorboard behind the driver's seat. Officer Galloway identified photographs that he took of the vehicle, the vehicle's trunk, and the spent casing. He testified that he was unable to recover any useable fingerprints from the vehicle. On cross-examination, Officer Galloway testified that he did not find any gunshot holes in the vehicle. He further testified that, after searching the vehicle "[t]o the best of his ability," the spent casing was the only evidence he found.

Officer Smith Boyland with the Memphis Police Department testified that he responded to the call at the Exxon station. He recalled that the victim was wearing only boxer shorts and had injuries on his elbows and knees. Officer Boyland took a brief statement from the victim and offered him medical attention. He referred the case to the Felony Response Unit for further investigation. On cross-examination, he testified that he could not recall at what time he arrived at the Exxon station.

Both appellants waived their right to testify; however, appellant Yancey called Ms. Deborah Fuller as a witness. Ms. Fuller testified that she was engaged to appellant Yancey. She had known appellant Yancey for three years, and they lived together at the time of the incident. Ms. Fuller stated that on September 18, 2009, appellant Yancey was at home because he was ill. She further stated that he had a bleeding ulcer and was vomiting blood. She recalled that day because they were supposed to go to her son's twenty-second birthday party but could not because of appellant Yancey's illness. Ms. Fuller said appellant Yancey did not go to the hospital for treatment because he did not want to go through painful testing. She gave him some medicine, and he began to feel better.

Ms. Fuller stated that she did not tell the State's investigators that appellant was sick at home all day on the day of the incident. She said she "practically had forgotten about it." Ms. Fuller testified that she knew the penalties for lying under oath and that she would not lie to save appellant Yancey.

On cross-examination, Ms. Fuller testified that she left work at 2:30 p.m. on September 18th. When she arrived at home, appellant Yancey was at their home in the bed. Ms. Fuller said appellant Yancey usually called her on her lunch breaks to let her know his location. She agreed she was not there to see him personally but said she trusted what he told her. According to Ms. Fuller, appellant Yancey was sick for approximately a week and a half. She said medical records showed that doctors diagnosed him with bleeding ulcers, but she did not have the records at trial.

Ms. Fuller spoke with investigators in January 2011. She told them that appellant Yancey was with her on September 18th. However, she did not tell investigators about her son's party when they initially spoke with her because she did not think about it. Ms. Fuller

stated she could recall September 18th because something tragic happened; her sick fiancé would not go to the hospital even though she begged him to do so. She said appellant Yancey would normally go to the hospital on his own. She agreed that she could have called 9-1-1 so paramedics could examine appellant Yancey but did not.

Ms. Fuller stated that she visited appellant Yancey in jail. She wanted him to be released from jail so they could marry. She said she did not know the victim, but she knew appellant McThune and "[hung] out" at his house. She further stated that all of appellant McThune's friends were Caucasian except for her and appellant Yancey.

After hearing the evidence, the jury deliberated and found appellant Yancey and appellant McThune guilty as charged. The trial court sentenced appellant Yancey to concurrent sentences of twenty years for especially aggravated kidnapping, ten years for aggravated robbery, and ten years for carjacking. The court sentenced him to six years for employing a firearm during the commission of a dangerous felony consecutive to the ten-year sentence for carjacking. Appellant Yancey received an effective twenty-year sentence in the Tennessee Department of Correction. The court ordered that appellant McThune serve twelve years for aggravated robbery. Both appellants filed motions for new trials, which the trial court denied. They filed separate appeals, which this court consolidated.

## II. Analysis

### A. Election of Offenses:
### Employing a Firearm during Commission of a Dangerous Felony

Appellant Yancey argues that the trial court erred by not requiring the State to elect upon which dangerous felony it relied for his conviction for employing a firearm during a dangerous felony. He asserts that the State's failure to elect a dangerous felony denied him his constitutional right to a unanimous jury verdict and that its failure to make an election was plain error. The State responds that appellant Yancey has waived this issue through his failure to include it in his motion for new trial, and that this court's review of the issue is not necessary to do substantial justice.

It is undisputed that appellant Yancey did not raise the issue of the State's failure to elect a dangerous felony during trial or in the motion for new trial. Generally, we consider issues waived when appellants fail to make a contemporaneous objection during trial and fail to raise the issue in a motion for new trial. *See* Tenn. R. App. P. 36(a); Tenn. R. App. P. 3(e). "Ordinarily, issues raised for the first time on appeal are waived." *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (citing *State v. Burtis*, 664 S.W.2d 305, 310 (Tenn. Crim. App. 1983)). However, under the plain error doctrine, "[w]hen necessary to

do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for new trial . . . ." Tenn. R. App. P. 36(b).

Our supreme court formally adopted this court's *Adkisson* test for reviewing claims of plain error:

> The Court of Criminal Appeals has developed five factors to consider when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith,* 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established by the record before a court will find plain error. *Id*. at 282. Complete consideration of all the factors is not necessary when at least one of the factors clearly cannot be established by the record. *Id*. "The party claiming plain error has the burden of persuading the appellate court." *State v. Workman*, No. E2010-02278-CCA-R3-CD, 2011 WL 6210667, at *10 (Tenn. Crim. App. Dec. 13, 2011) (citing *State v. Banks*, 271 S.W.3d 90, 119 (Tenn. 2008)).

In the instant case, the record clearly established what occurred in the trial court. The jury convicted appellant of employing a firearm during the commission of a dangerous felony. *See* Tenn. Code Ann. § 39-17-1324(b)(1) (2006). The indictment did not specify which dangerous felony gave rise to this offense. Tennessee Code Annotated enumerates certain felonies that are considered dangerous felonies. *See id*. § 39-17-1324(i)(1). The statute lists especially aggravated kidnapping and carjacking, both of which the jury convicted appellant Yancey, as dangerous felonies.

In addition, our review of the jury instructions revealed that the trial court did not instruct the jury about which dangerous felony, especially aggravated kidnapping or carjacking, formed the basis of the employing a firearm during the commission of a dangerous felony charge. The record indicates that the trial court instructed the jury that:

> Any person who Employs a Firearm with the Intent to go Armed During the Commission of or Attempt to Commit a Dangerous Offense is guilty of a crime.

For you to find the defendant guilty of this offense, the [S]tate must have proven beyond a reasonable doubt the existence of the following essential elements:

(1)     that the defendant employed a firearm;

and

(2)     that the employment was during the commission of or attempt to commit an offense (Especially Aggravated Kidnapping or Carjacking):

and

(3)     that the defendant acted either intentionally, knowingly, or recklessly.

Although the trial court narrowed the possible felonies that could serve as the basis for this charge to two, it still did not instruct the jury upon which felony the State relied.

We note that pursuant to the statute, "[a] person may not be charged with a violation of subsection (a) or (b) if possessing or employing a firearm is an essential element of the underlying dangerous felony as charged." Tenn. Code Ann. § 39-17-1324(c) (2006). The State charged appellant Yancey with especially aggravated kidnapping by use of a deadly weapon. Because the only deadly weapon about which the State offered proof was a gun, especially aggravated kidnapping could not serve as the basis for the employing a firearm during the commission of a dangerous felony. *See Michael L. Powell and Randall S. Horne*, 2012 WL 1655279, at *14 (concluding that aggravated kidnapping could not serve as the predicate offense for the firearms conviction because a gun was the only deadly weapon about which the State adduced any proof). The State charged appellant Yancey with carjacking by force or intimidation not by use of a deadly weapon, and thus, the carjacking charge is the only one upon which the firearms charge may stand.

The trial court did not provide a complete instruction regarding the employing a firearm during the commission of a felony charge. The record does not show upon which felony, especially aggravated kidnapping or carjacking, the jury relied when it convicted appellant Yancey of employing a firearm during the commission of a dangerous felony. "[T]he trial court has a duty 'to give a complete charge of the law applicable to the facts of a case.'" *State v. Thompson*, 285 S.W.3d 840, 842 n.1 (Tenn. 2009) (quoting *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)). "Moreover, the trial court must provide the jury with proper instructions as to the law governing the issues raised and the evidence introduced even without request." *Michael L. Powell and Randall S. Horne*, 2012 WL

-10-

1655279, at *15 (citing *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011)). Accordingly, we hold that the trial court's failure to completely instruct the jury was a breach of a clear and unequivocal rule of law.

A substantial right of accused was adversely affected. The Tennessee Constitution grants criminal defendants the right to a unanimous verdict before the jury may impose a conviction of a criminal offense. *See State v. Lemacks*, 996 S.W.2d 166, 169-70 (Tenn. 1999) (citing *State v. Shelton*, 851 S.W.2d 134 (Tenn. 1993); *State v. Brown*, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991)). "When the proof shows multiple offenses which each could sustain the allegations of the criminal charge, it is 'the duty of the trial judge to . . . properly instruct the jury so that the verdict of every juror would be united on the one offense.'" *State v. Kenneth Lee Herring*, No. M1999-00776-CCA-R3-CD, 2000 WL 1208311, at *6 (Tenn. Crim. App. Aug. 24, 2000) (quoting *Burlison v. State*, 501 S.W.2d 801, 804 (Tenn. 1973)). In the instant case, the jury had the choice of two felonies, only one of which was applicable, upon which it could base its guilty verdict for the employing a firearm during the commission of a dangerous felony charge. The trial court did not instruct the jury on which felony was applicable to the charge. Thus, the jury may have convicted appellant Yancey in contravention of the statute.

Nothing in the record suggests that appellant Yancey waived review of this issue for tactical reasons.

Finally, consideration of the error is necessary to do substantial justice. Appellant was convicted of and sentenced for employing a firearm during the commission of a dangerous felony. Appellant's conviction for possession of a firearm during the commission of a dangerous felony had two possible underlying felonies to support it; however, only one was statutorily permissible. Use of a weapon is an essential element of especially aggravated kidnapping as charged in this case, and the State only presented proof of appellant Yancey using a firearm as a weapon. Thus, pursuant to Tennessee Code Annotated section 39-17-1324, in this case, the State could not charge appellant Yancey with both especially aggravated kidnapping through use of a firearm and possession of a firearm during the commission of a dangerous felony when the requisite felony was especially aggravated kidnapping. *See Anthony D. Byers v. State*, No. W2011-00473-CCA-R3-PC, 2012 WL 938976, at * 9 (Tenn. Crim. App. Mar. 15, 2012) (holding that charging a defendant with employing a firearm during the commission of a dangerous felony and carjacking by use of a deadly weapon when the only deadly weapon used was a firearm is in direct contravention to Tennessee Code Annotated section 39-17-1324(c)). The trial court's including especially aggravated kidnapping as a possible underlying felony supporting the firearm charge created the possibility of the jury convicting appellant Yancey of a nonexistent crime. "Due process does not countenance the conviction of a nonexistent crime." *State v. Michael L. Powell and*

*Randall S. Horne*, No. E2011-00155-CCA-R3-CD, 2012 WL 1655279, at *14 (Tenn. Crim. App. May 10, 2012) (citing *Adams v. Murphy*, 653 F.2d 224, 225 (5th Cir. 1981)). Accordingly, we conclude that review of the issue is "necessary to do substantial justice." Tenn. R. App. P. 36(b).

Based on the foregoing, we conclude that the trial court committed plain error in not requiring the State to elect upon which felony it relied to support the charge of employing a firearm during the commission of a dangerous felony and in failing to properly instruct the jury regarding the charge.[2] The appropriate remedy is to reverse appellant Yancey's conviction for employing a firearm during the commission of a dangerous felony and remand for a new trial. *See Michael L. Powell and Randall S. Horne*, 2012 WL 1655279, at *15 (citing *State v. White,* 362 S.W.3d 559, 580 (Tenn. 2012); *State v. Howard,* 30 S.W.3d 271, 273 (Tenn. 2000)).

## B. Unanimous Jury Verdict: Carjacking

In this case, appellant was indicted for and convicted of carjacking. The offense of carjacking is defined as "the intentional or knowing taking of a motor vehicle from the possession of another" and can be accomplished by one of two distinct methods: by use of a deadly weapon or by force or intimidation. Tenn. Code Ann. § 39-13-404 (2010). The State indicted appellant for carjacking by use of force or intimidation. The trial court charged the jury with respect to carjacking as follows:

Any person who commits the offense of carjacking is guilty of a crime.

For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:

---

[2] Appellant Yancey argues that his conviction must be reversed based on an election issue. We note that in a similar case, *State v. Jeremiah Dawson*, No. W2010-02621-CCA-R3CD, 2012 WL 157221, at *5 (Tenn. Crim. App. May 2, 2012), this court refused to grant appellant relief on his claims that his dual convictions for carjacking and employing a firearm during the commission of a dangerous felony violated double jeopardy. However, as discussed herein *infra*, the court ultimately reversed the appellant's convictions for carjacking and employing a firearm during the commission of a dangerous felony based on erroneous jury instructions. As a result of the erroneous jury instructions, the court remanded the case for a new trial rather than dismiss the charges.

Part A:

(1)     that the defendant took a motor vehicle from the possession of another
         by use of a deadly weapon;

and

(2)     that the defendant acted either intentionally or knowingly.

*or*

Part B:

(1)     that the defendant took a motor vehicle from the possession of another
         by force or intimidation;

and

(2)     that the defendant acted either intentionally or knowingly.

(emphasis added).

We note from our review of the record that the trial court's instructions permitted the jury to deliberate upon both means of committing the offense of carjacking, while the indictment charged only one course of criminal conduct, specifically, carjacking by use of force or intimidation. Moreover, the jury instructions, given in the disjunctive, allowed the individual jurors to arrive at a decision of guilt based on either of two scenarios. Thus, the trial court's instructions created the potential for a non-unanimous jury verdict on the offense of carjacking.

Our supreme court has held:

[T]here should be no question that the unanimity of twelve jurors is required in criminal cases under our state constitution. A defendant's right to a unanimous jury before conviction requires the trial court to take precautions to ensure that the jury deliberates over the particular charged offense, instead of creating a "patchwork verdict" based on different offenses in evidence.

*State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993) (internal citations and quotations omitted). Moreover, in cases in which "there is technically one offense, but evidence of

-13-

multiple acts which would constitute the offense, a defendant is still entitled to the protection of unanimity." *State v. Forbes*, 918 S.W.2d 431, 446 (Tenn. Crim. App. 1995) (citing *State v. Brown*, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991)). This court has further stated:

> In cases involving evidence which shows a real potential that a conviction may occur as a result of different jurors concluding that the defendant committed different acts, each of which separately showing the commission of an offense, the trial court must augment the general unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular set of facts. The assessment of this potential would involve consideration of the allegations made and the statutory offense charged, as well as the actual evidence presented.

*Forbes*, 918 S.W.2d at 446 (quoting *Brown*, 823 S.W.2d at 583). In a recent opinion addressing this issue, we concluded:

> Although the appellant was indicted for carjacking by force or intimidation, our review of the jury charge reveals that the trial court instructed the jury on carjacking by force or intimidation and carjacking with a deadly weapon. When a statute contains different ways to commit the offense it proscribes, the instruction given to the jury should be limited to the precise offense alleged in the charging instrument to the exclusion of the remaining theories. Given the evidence, the jury very easily could have convicted the appellant of carjacking by use of a deadly weapon, a theory under which he was not charged. Moreover, convicting the appellant of carjacking by use of a deadly weapon when the weapon was a firearm would have precluded a conviction of employing a firearm during the commission of a dangerous felony.

*Jeremiah Dawson*, 2012 WL 157221, at \*8 (Tenn. Crim. App. May 2, 2012) (internal citations and quotations omitted); *see Anthony D. Byers v. State*, No. W2011-00473-CCA-R3-PC, 2012 WL 938976, at \*9 (Tenn. Crim. App. Mar. 15, 2012) (indicting a defendant for employing a firearm during the commission of a dangerous felony and carjacking by use of a deadly weapon directly contravenes Tennessee Code Annotated section 39-17-1324(c) where the deadly weapon relied upon by the State was a firearm). These cases are part of Tennessee courts' history of upholding a defendant's right to a unanimous jury verdict. *See, e.g., State v. Richard Burton*, No. W2007-02364-CCA-R3-CD, 2008 WL 2699655, at \*4 (Tenn. Crim. App. July 9, 2008) ("trial court's instruction to the jury prevented it from reaching a unanimous verdict because it was unknown whether the jury's conviction was based upon the introduction of contraband as charged, or based upon an impermissible inference of possession"); *Forbes*, 918 S.W.2d at 445 ("[t]he instruction, coupled with the

evidence of two separate offenses, or at the very least two separate acts establishing an offense, resulted in a substantial possibility of a non-unanimous jury verdict.). We further note that in this case, "trial court took no precautions to preserve unanimity; the only instruction in this regard was 'the verdict must be unanimous.' As a result, there was a strong possibility of a composite jury verdict in violation of [appellant's] federal and state constitutional rights to a unanimous jury verdict." *Forbes*, 918 S.W.2d at 447.

In *Jeremiah Dawson*, appellant attacked the sufficiency of the evidence underlying his convictions for carjacking and employing a firearm during the commission of a dangerous felony based solely on the grounds of identification. Notwithstanding Dawson's failure to raise the claim regarding improper jury instructions, this court reversed Dawson's convictions on that basis. Similarly, in this case, we apply the plain error doctrine to correct "an error that has affected the substantial rights of [appellant], even though the error was not raised in the motion for new trial . . . ." Tenn. R. App. P. 36(b). Following the precedent set by *Jeremiah Dawson*, we reverse appellant's conviction for carjacking and remand to the trial court for a new trial.

## C. Sufficiency of the Convicting Evidence

Appellants both challenge the sufficiency of the convicting evidence. Appellant Yancey asserts that the State's case rested on the "incredible" testimony of the victim, which no rational trier of fact could believe. Appellant McThune asserts that he was not a principal actor nor was he criminally responsible for the aggravated robbery. The State responds that the evidence was sufficient to establish the guilt of both appellants.

The standard for appellate review of a claim of insufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729; *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or

circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

### 1. *Appellant Yancey*

Appellant Yancey challenges the sufficiency of the evidence underlying his convictions and asks this court to disregard the victim's testimony because no physical evidence supported his convictions. The State responds that the evidence proved appellant Yancey's guilt beyond a reasonable doubt. We agree with the State.

The jury convicted appellant Yancey of aggravated robbery, especially aggravated kidnapping, carjacking, and employing a firearm during the commission of a dangerous felony. Our review of his convictions for employing a firearm during the commission of a dangerous felony and carjacking, *supra*, is dispositive of those convictions. Our analysis of the sufficiency of the convicting evidence is therefore confined to the convictions for aggravated robbery and especially aggravated kidnapping.

Tennessee Code Annotated defines robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401 (2006). To sustain the conviction for aggravated robbery, the State had to prove that appellant Yancey committed a robbery "with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-402 (2006). For the especially aggravated kidnapping conviction, the State had to prove that appellant Yancey, while using a deadly weapon, knowingly removed or confined the victim unlawfully, so as to interfere substantially with his liberty. Tenn. Code Ann. §§ 39-13-305, 302 (2006).

Viewed in the light most favorable to the State, the evidence showed that appellant Yancey attacked the victim, and held a gun to the victim's head while Beball and appellant McThune stole his property. The victim stated that the men stole his pants, shoes, cell phones, and approximately $2,600 in cash. During the robbery, appellant Yancey fired several shots next to the victim's head. We conclude that the evidence was sufficient to support the conviction for aggravated robbery.

Moreover, after taking the keyless entry device out of the victim's pants, appellant Yancey forced the victim at gunpoint to walk outside. Once outside, appellant Yancey forced the victim at gunpoint into the trunk of the victim's vehicle. The victim was in the trunk as appellant Yancey and Beball drove away. The victim remained in the trunk until he was eventually able to escape by pulling a wire that caused the trunk's lock to release and open. The evidence clearly showed that appellant Yancey used a deadly weapon to knowingly remove and confine the victim unlawfully, so as to interfere substantially with the victim's liberty. After the victim was able to escape, appellant Yancey and Beball continued to drive away in the victim's vehicle. Thus, we conclude that the evidence was sufficient to support appellant Yancey's conviction for especially aggravated kidnapping.[3]

Appellant Yancey, citing the "physical facts rule," asserts that this court should disregard the victim's testimony because it was irreconcilable with the physical evidence.

> The so-called "physical facts rule" is the accepted proposition that in cases where the testimony of a witness is entirely irreconcilable with the physical evidence, the testimony can be disregarded. That is, where the testimony of a witness "cannot possibly be true, is inherently unbelievable, or is opposed to natural laws," courts can declare the testimony incredible as a matter of law and decline to consider it. As stated by the Court in *Wood v. United States*, 342 F.2d 708, 713 (8th Cir. 1965), "where undisputed physical facts are entirely inconsistent with and opposed to testimony . . . the physical facts must control. No jury can be allowed to return a verdict based upon oral testimony which is flatly opposed to physical facts, the existence of which is incontrovertibly established."

---

[3] After reviewing the facts of this case in light of our supreme court's opinion in *State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012) , we conclude that the evidence was legally sufficient for the jury to convict appellant of both especially aggravated kidnapping and aggravated robbery, whether the trial court had given the jury the instruction in *White* or the prior standard instruction. Furthermore, neither party raised the issue on appeal, and we do not discern any error that affected a substantial right of appellant. *See* Tenn. R. App. P. 36(b).

*State v. Hornsby*, 858 S.W.2d 892, 894 (Tenn. 1993) (internal citations omitted). "Courts have made it clear that in order for testimony to be considered incredible as a matter of law, it must be unbelievable on its face, i.e., testimony as to facts or events that . . . could not have occurred under the laws of nature." *State v. Allen*, 259 S.W.3d 671, 680 (Tenn. 2008). If a witness's testimony is impossible to reconcile with physical evidence, an appellate court is not bound to consider it when determining whether the evidence was sufficient to support the conviction. *Id.* (citing *Hornsby*, 858 S.W.2d at 894). However, an appellant may not invoke the "physical facts rule" when the application of it is dependent on "assumptions or calculations based upon estimates as to speed, distance, time, and other such uncertain matters in the movement of vehicles." *Hornsby*, 858 S.W.2d at 895 (citing *Waller v. Morgan*, 133 S.W.2d 614, 616 (Tenn. Ct. App. 1939)).

In the instant case, appellant Yancey asserts that it was physically impossible for the victim to jump from the vehicle as it sped down the interstate and not suffer any serious physical injury. The victim testified that as a result of his jumping out of the trunk, he had scars on his arms, legs, and ankles. In addition, Officer Boyland testified that he observed injuries on the victim's elbows and knees and offered to get medical assistance for the victim. The victim did not jump out of the vehicle unscathed. It is not inherently impossible that the victim only injured his arms, legs, and ankles after jumping out of the trunk. Further, the application of the rule to these facts depends on the speed of the vehicle. Any testimony as to the speed by a lay witness is obviously an estimate. Thus, appellant Yancey may not invoke the physical facts rule under these circumstances. *See id*. Appellant Yancey claims that the victim's testimony was incredible; however, as previously noted, determining questions of the credibility of the witnesses and inconsistencies in testimony are within the province of the jury. *Sheffield*, 676 S.W.2d at 547. Accordingly, we conclude that the physical facts rule is inapplicable in this case, and the evidence was sufficient to sustain appellant Yancey's convictions. He is not entitled to relief on this issue.

2. *Appellant McThune*

Appellant McThune argues that the evidence was insufficient to sustain his conviction for aggravated robbery because "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." In its response, the State argues that the victim's testimony was sufficient to allow a reasonable jury to conclude that appellant McThune committed the aggravated robbery of the victim. Again, we agree with the State.

The evidence at trial, viewed in the light most favorable to the State, showed that appellant McThune was next to the bed while appellant Yancey and Beball were removing the victim's clothing and taking his belongings. Appellant McThune gathered the victim's belongings and placed them in his lap. When appellant Yancey ran out of ammunition during

the robbery, appellant McThune went into the kitchen and retrieved another clip for him. The evidence was sufficient to convict appellant McThune, as a principal actor, of aggravated robbery.

The evidence was also sufficient to convict appellant McThune of aggravated robbery under a theory of criminal responsibility. Under the criminal responsibility theory, a jury may find a defendant guilty of an offense if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [he or she] solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (2006). "[T]o be held criminally responsible for the acts of another, the defendant need only 'associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" *State v. Jose Garcia*, No. M2010-01661-CCA-R3-CD, 2012 WL 850698, at *15 (Tenn. Crim. App. Mar. 13, 2012) (quoting *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994)).

> Presence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which one's participation in the crime may be inferred. No particular act need be shown. It is not necessary for one to take a physical part in the crime. Mere encouragement of the principal is sufficient.

*State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998) (citation omitted).

The evidence, viewed in the light most favorable to the State, showed that appellant McThune aided in the commission of the robbery by gathering the victim's property as appellant Yancey and Beball removed it from him at gunpoint. When appellant Yancey ran out of bullets, appellant McThune went to get more. Appellant McThune argues that he got the ammunition after the robbery was complete; however, the victim's testimony, which the jury accredited, negates that claim.

Appellant McThune further argues that he was not criminally responsible because if he were not at the scene, the crime would still have happened. Whether appellant Yancey and Beball could have carried out the crime without his assistance is of no consequence. Appellant McThune gathered the victim's property, provided ammunition for the gun used during the robbery, and stood by as appellant Yancey and Beball robbed the victim. Appellant McThune clearly "associate[d] himself with the venture, act[ed] with knowledge that an offense [was] to be committed, and share[d] in the criminal intent of the principal in the first degree." *Maxey*, 898 S.W.2d at 757. Accordingly, we conclude that the evidence was sufficient to convict appellant McThune of aggravated robbery.

D. Sentencing of Appellant McThune

Appellant McThune argues that the trial court erred in sentencing him. Specifically, he contends that the trial court committed error when it denied as mitigating factors that his conduct neither threatened nor caused serious bodily injury and that he played a minor role in the commission of the offense. The State responds that the trial court properly sentenced appellant McThune. We agree with the State.

When an accused challenges the length and manner of service of a sentence, this court conducts a de novo review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). We condition this presumption upon "the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We do not apply the presumption to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court predicated upon uncontroverted facts. *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); *State v. Bonestel*, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a de novo review of a sentence, we must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel about sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *Ashby*, 823 S.W.2d at 169.

When imposing a sentence within the appropriate range of punishment for a defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1)     The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum

length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2)     The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210 (2010). From this, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting Tenn. Code Ann. § 40-35-210(d)). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Id*. at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007) *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

Pursuant to the 2005 amendments, our Sentencing Act has abandoned the statutory minimum sentence and renders enhancement and mitigating factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, 40-35-210(c) (2010). The 2005 amendments set forth certain "advisory sentencing guidelines" that do not bind the trial court; however, the trial court is required to consider them. *See id*. § 40-35-210(c). Although the application of factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court is also required to place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *Carter*, 254 S.W.3d, at 345. The burden of proving applicable mitigating factors rests upon the appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at * 6 (Tenn. Crim. App. Sept. 18, 1995).

In arriving at appellant McThune's twelve-year sentence, the court found that appellant was a Range I offender. The court found as enhancement factors that appellant McThune had a previous history of criminal conviction or behaviors in addition to those necessary to establish the appropriate sentencing range, that he had a previous history of unwillingness to comply with a sentence involving release, that he was on probation when he committed this offense, and that he had very little hesitation about committing a crime when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(1), (8), (10), (13)(C) (2006). The evidence supports the trial court's application of those enhancement

factors, and appellant McThune does not challenge them. The trial court did not apply any mitigating factors and sentenced appellant to twelve years, the maximum for his range.

Appellant McThune argues that the trial court should have applied as mitigating factors that he played a minor role in the offense and that his conduct neither threatened nor caused serious bodily injury. *See id.* § 40-35-113 (1), (4). The trial court declined to apply as a mitigating factor that his conduct neither threatened nor caused serious bodily injury, noting that "any time a person's robbed at gunpoint it does threaten serious bodily injury." The court noted that due to appellant McThune's limited mobility his role was minor compared with appellant Yancey's and recognized that mitigating factor extended to appellant McThune "to a certain degree"; however, the court ultimately declined to apply that mitigating factor. Moreover, the trial judge stated that he sympathized with appellant McThune's confinement to a wheelchair, but his confinement did not lessen the seriousness of the offense.

The evidence does not support the application of the mitigating factors submitted by appellant McThune. Appellant McThune engaged in robbery accomplished by using a gun. Appellant Yancey shot the gun next to the victim's head during the robbery, and when he ran out of ammunition, appellant McThune retrieved more. Appellant McThune gathered the victim's belongings as the other men took them from the victim. Accordingly, we conclude that the trial court did not err in denying the mitigating factors. Appellant McThune is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm appellant Yancey's convictions for aggravated robbery and especially aggravated kidnapping. We reverse his convictions for carjacking and employing a firearm during the commission of a dangerous felony and remand for a new trial on those charges. We affirm appellant McThune's conviction and sentence.

_____
ROGER A. PAGE, JUDGE